# Illinois Official Reports

## Appellate Court

***Illinois Neurospine Institute, P.C. v. Carson*, 2017 IL App (1st) 163386**

| | |
|---|---|
| Appellate Court Caption | ILLINOIS NEUROSPINE INSTITUTE, P.C., Plaintiff-Appellant, v. LEON CARSON, Defendant-Appellee. |
| District & No. | First District, Fourth Division<br>Docket No. 1-16-3386 |
| Filed | September 21, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2016-L-000391, the Hon. Patrick J. Sherlock, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Bernard A. Henry, of Rieck & Crotty, P.C., of Chicago, for appellant.<br><br>Harry C. Lee, of Chicago, for appellee. |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Justices McBride and Ellis concurred in the judgment and opinion. |

**OPINION**

¶ 1    The instant appeal arises from the trial court's grant of defendant Leon Carson's section 2-1401 petition to vacate a default judgment (735 ILCS 5/2-1401 (West 2014)) entered against him in a breach of contract lawsuit filed by plaintiff Illinois Neurospine Institute, P.C. Plaintiff appeals, arguing that the trial court erred in granting the petition because defendant did not allege due diligence in his petition. For the reasons that follow, we reverse.

¶ 2                                    BACKGROUND

¶ 3    On January 13, 2016, plaintiff filed a breach of contract complaint against defendant, alleging that on November 28, 2011, and continuing thereafter, defendant sought medical care and treatment from plaintiff for injuries that defendant had suffered; the complaint did not detail the type of injuries defendant had suffered or the cause of those injuries. The complaint further alleges that on February 9, 2012, defendant entered into a written agreement with plaintiff whereby defendant agreed to be financially responsible to plaintiff for all professional medical services provided by plaintiff. The complaint alleges that plaintiff had fully performed its obligations under the written agreement, but that, "after applying all credits for payments made by or on behalf of [defendant]," there remained an outstanding balance of $98,276.78. Accordingly, defendant requested judgment in his favor for $98,276.78, plus interest and court costs.

¶ 4    Attached to the complaint was a document entitled "Financial Responsibility Statement," which provided that "For and in consideration of services rendered by [plaintiff], patient (responsible person) hereby agrees to and guarantees payment of all charges incurred for the account of the patient." The financial responsibility statement contained defendant's printed name handwritten on the bottom of the statement on the line labeled "Patient Name" and contained a handwritten date of February 9, 2012. There appears to be a space for an additional name, but that space has been whited-out, so it is not clear whose name, if any, appeared there.

¶ 5    According to the record on appeal, defendant was personally served with a copy of the summons and complaint on January 27, 2016.

¶ 6    The matter was set for a status hearing on March 10, 2016, at which "all parties must be represented by counsel or appear in person and must be prepared to report to the court on the status of the case including the status of discovery." On that date, the trial court entered an order of default against defendant and set the matter for prove-up of damages on April 7, 2016. On April 7, 2016, the trial court continued the prove-up to April 15, 2016. On April 15, 2016, the trial court entered judgment in the amount of $98,276.78 plus court costs in favor of plaintiff and against defendant.

¶ 7    On October 18, 2016, plaintiff filed citations to discover assets directed at both defendant and a law firm.

¶ 8    On October 20, 2016, defendant, through the law firm listed in the citation to discover assets, filed a petition to vacate the default judgment pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2014)). The petition contained a "factual overview" section, which provided that on December 21, 2010, defendant slipped and fell while working at a grocery store as a merchandiser for Coca-Cola, which "caused [defendant] to herniate a disc between L5 and S1, requiring a discectomy and fusion." Due to this accident,

on February 1, 2011, defendant "filed a complaint[1] against his employer, Coca-Cola[,] under the Workers' Compensation Act [(820 ILCS 305/1 *et seq.* (West 2010))]." In 2012, defendant filed a third-party personal injury lawsuit against the grocery store and two other defendants.

¶ 9 According to the 2-1401 petition, from August 29, 2011, until May 8, 2013, defendant was treated by Dr. Ronald Michael, one of plaintiff's physicians, for his injuries and, on March 24, 2012, underwent a lumbar fusion and discectomy performed by Dr. Michael. Defendant was charged a total of $124,743.71 in connection with his care and treatment by plaintiff.

¶ 10 According to the petition, on February 27, 2014, defendant's workers' compensation claim was settled for $100,000. Plaintiff and Dr. Michael, "who liened [defendant's] workers' compensation claim,"[2] were paid $27,003.59 from the settlement. On January 6, 2016, Dr. Michael also asserted a physician's lien in defendant's third-party personal injury lawsuit.

¶ 11 According to the petition, on January 13, 2016, "Dr. Michael" filed the complaint in the instant case for breach of contract, alleging that defendant had breached his contract "with Dr. Michael."[3] On April 15, 2016, the trial court entered judgment against defendant and in favor of plaintiff in the amount of $98,276.78, which was "seemingly the balance of the $124,743.71 which was offset by the payment of $27,003.59 from the workers' compensation settlement, plus interest and costs of filing suit."

¶ 12 According to the petition, on October 12, 2016, defendant settled his third-party personal injury lawsuit for $800,000. Defendant did not believe that plaintiff or Dr. Michael were entitled to further reimbursement, but "in an attempt to resolve the alleged outstanding balance owed to [plaintiff] and Dr. Michael, offered $15,000.00 in full and final resolution of the lien," which plaintiff rejected.

¶ 13 The petition asked the trial court to vacate the April 15, 2016, judgment, claiming "(1) the Illinois Workers' Compensation Act, 820 ILCS 305 § 8.2(e) expressly prohibits balance billing; (2) [plaintiff's] charges far exceed the Illinois Commission's proscribed [*sic*] fee schedule; (3) [defendant] has a good faith belief that the contract suggesting his consent to

[1]We presume that defendant actually filed an application for adjustment of claim with the Workers' Compensation Commission, as opposed to filing a "complaint" in the circuit court, because proceedings before the circuit court would only occur if defendant was seeking review of the Commission's decision under section 19(f) of the Workers' Compensation Act. 820 ILCS 305/19(f) (West 2010).

[2]It is not clear exactly what defendant is referring to by claiming that his workers' compensation settlement was "liened." Section 21 of the Workers' Compensation Act states that "[n]o payment, claim, award or decision under this Act shall be assignable or subject to any lien, attachment or garnishment, or be held liable in any way for any lien, debt, penalty or damages." 820 ILCS 305/21 (West 2010). Furthermore, under the Health Care Services Lien Act, "[e]very health care professional and health care provider that renders any service in the treatment, care, or maintenance of an injured person, *except* services rendered under the provisions of the Workers' Compensation Act *** shall have a lien upon all claims and causes of action of the injured person for the amount of the health care professional's or health care provider's reasonable charges up to the date of payment of damages to the injured person." (Emphasis added.) 770 ILCS 23/10(a) (West 2010). Thus, neither plaintiff nor Dr. Michael would have been able to subject defendant's workers' compensation award to a lien.

[3]We note that Dr. Michael is not a party to the complaint at issue in the instant case, which lists only plaintiff—the corporation—as a plaintiff. However, Dr. Michael's affidavit, discussed further below, indicates that he was an officer of the corporation.

repay [plaintiff] and Dr. Michael for professional medical services is not authentic; and (4) interests of equity [and] fairness require the judgment be vacated." The petition did not claim that defendant had acted with due diligence in answering the complaint or in filing the petition but instead claimed that " '[a] petition may be granted even in absence of a showing of due diligence where justice or good conscience require.' "[4] The petition was not verified and no affidavit from defendant was attached to the petition.

¶ 14 On December 1, 2016, plaintiff filed a response to defendant's section 2-1401 petition to vacate the default judgment. The response claimed that (1) the petition was not supported by affidavit and (2) the petition did not make a showing of due diligence in responding to the complaint. With respect to the due diligence argument, plaintiff argued that the equitable exception to the due diligence requirement has been applied only where the opposing party or its counsel acted improperly and defendant "does not argue any trick or contrivance to justify his failure to appear to assert his defenses within the time required by law." Plaintiff noted that defendant admitted in his petition that he had been served with the summons and complaint and did not explain why he did not file an appearance or answer the complaint after receiving such notice. Plaintiff further argued that defendant had made no showing that his defenses to the complaint had only come to light since judgment had been entered. Plaintiff also argued that defendant had offered no explanation for his delay in filing his petition to vacate the default judgment. Finally, plaintiff challenged defendant's defenses and argued that defendant had failed to establish that he had a meritorious defense to the complaint.

¶ 15 Attached to the response was the affidavit of Dr. Michael, in which he averred that defendant executed the financial responsibility statement that was attached to the complaint, which had been delivered to plaintiff via fax from a fax number that defendant had provided as his fax number. Dr. Michael averred that he was the individual in charge of all medical billing and coding of charges, that the amounts charged by plaintiff were the same rates charged to all patients, and that defendant's outstanding balance was $98,276.78. Dr. Michael further averred that he "consulted with [defendant's] attorneys in connection with his Workers' Compensation case and personal injury litigation" and had been advised that plaintiff's bills would be paid through the lien on the personal injury cause of action, as opposed to the workers' compensation claim. Defendant's attorney "requested [Dr. Michael's] cooperation and patience in building [defendant's] case by, among other things, submitt[ing] [plaintiff's] bills as evidence of [defendant's] damages and providing deposition testimony regarding the treatment provided to [defendant]." Accordingly, Dr. Michael did not attempt any further collection under the Workers' Compensation Act and "it was [his] understanding that [defendant] had abandoned his claim for workers' compensation recovery as to [plaintiff's] bills and that such claims would be paid pursuant to the Illinois Health Services Lien Act and contract rights." Dr. Michael averred that "[u]pon information and belief, [defendant's]

---

[4]Defendant purports to be quoting the Illinois Supreme Court decision of *Smith v. Airoom, Inc.*, 114 Ill. 2d 209 (1986). However, while the proposition of law defendant cites is accurate, the language defendant "quotes" appears nowhere in the decision. Instead, the supreme court held that "[b]ecause a section 2-1401 petition is addressed to equitable powers, courts have not considered themselves strictly bound by precedent, and where justice and good conscience may require it a default judgment may be vacated even though the requirement of due diligence has not been satisfied." *Airoom*, 114 Ill. 2d at 225.

settlement approved by the Illinois Workers' Compensation Commission made no provision for the payment of [plaintiff's] bills under the Workers' Compensation Act."

¶ 16 On December 9, 2016, defendant filed a reply in support of his section 2-1401 petition, in which he claimed that his "meritorious defense and diligence in bringing this Petition to Vacate per Section 2-1401, along with the interests of equity, justice and fairness, require the default judgment be vacated to effect substantial justice." Defendant first argued that the financial responsibility statement was not valid because it did not contain his signature. In making this argument, defendant admitted that counsel for plaintiff had informed him that a judgment in the amount of $98,276.78 had been entered in favor of plaintiff and against defendant and had sent defendant's counsel a copy of the default judgment and complaint. In response to being informed of the default judgment, defendant's counsel claimed that the contract did not contain defendant's signature.

¶ 17 Defendant also addressed plaintiff's arguments concerning due diligence, arguing that "the issue of diligence in defending the underlying suit is the last element considered by Illinois Courts of Appeal, including the Illinois Supreme Court, when determining if the petitioner's motion for vacatur should be granted." Defendant claimed that "[h]ere, principals [*sic*] of equity, justice and good conscious [*sic*] require the default judgment be vacated even though [defendant] admittedly did not take action when receiving summons and the Complaint. When the Complaint was filed, in January of 2016, [defendant] was consumed with his third party personal injury lawsuit, and believed [plaintiff's] medical bills had been satisfied because [plaintiff] chose to receive immediate repayment from [defendant's] worker' compensation award two years prior." Defendant claimed that he "fully became aware [plaintiff] was continuing [to] pursue satisfaction of outstanding payment" at the time of the settlement of his personal injury lawsuit on October 5, 2016. At that point, "[defendant] realized [plaintiff] was demanding repayment of nearly $100,000.00 and he reviewed the Contract at issue." Defendant claimed that "[i]mmediately after appreciating the fraudulent nature of the Contract and [plaintiff's] decision to ignore well-established Illinois law," defendant filed his section 2-1401 petition 15 days later.

¶ 18 Finally, defendant addressed the claims made by plaintiff as to the existence of a meritorious defense. In addressing these claims, defendant also argued that an affidavit was not required, because he provided "considerable new evidence brought to light after the entry of the default judgment," which included "(a) the realization that the Contract was not signed and that [plaintiff] cannot produce a signed version of said Contract, (b) the realization that [plaintiff] would be illegally balanced [*sic*] billing by recovering from [defendant's] third party personal injury lawsuit after recovering from workers' compensation proceeds, and (c) the realization [that plaintiff's] charges are over 64% more than that proscribed [*sic*] by the Commission's fee schedule." Defendant also argued that Dr. Michael had made numerous false statements in his affidavit, including his claims that he had spoken with defendant's counsel.

¶ 19 Attached to the reply was an e-mail chain between plaintiff's counsel and defendant's counsel, which contains an e-mail dated October 5, 2016, from plaintiff's counsel stating: "Here is the agreement, default order and the judgment order." Also attached to the reply was defendant's affidavit, in which defendant averred that "[p]rior to January 13, 2016, I had never seen the Financial Responsibility Statement, nor did I agree to its terms." Defendant further averred that his handwriting did not appear on the financial responsibility statement, nor did

his signature, and he "never entered into any written or oral agreement with the Plaintiff to pay for medical services above the cost approved by worker's compensation schedules."

Finally, attached to the reply was the affidavit of defendant's counsel, Thomas Murphy, who averred that he represented defendant in his third-party personal injury lawsuit. Murphy averred that "[p]rior to settlement of the third party personal injury lawsuit, [he] made repeated efforts to get in touch with [defendant's] treater," Dr. Michael. However, "[e]ach time [he] called the office, [he] was denied the ability to speak with Dr. Michael and [he] was not given the opportunity to leave a message, or schedule a phone conference with the doctor. Moreover, [he] never received a call-back from the doctor." Murphy averred that he "was not even able to briefly discuss [defendant's] medical conditions and treatment prior to Dr. Michael's discovery deposition in the underlying third party personal injury case, as is common with plaintiff's medical treaters prior to their discovery deposition in a personal injury case." Finally, Murphy averred that "[o]n information and belief, of the $100,000.00 workers' compensation settlement proceeds, [plaintiff] and Dr. Michael received $27,003.59 in repayment for medical services rendered to [defendant]."

On December 21, 2016, the trial court entered an order granting defendant's section 2-1401 petition to vacate the default judgment. This appeal follows.

ANALYSIS

On appeal, plaintiff argues that the trial court erred in granting defendant's section 2-1401 petition to vacate the default judgment against him because defendant's petition was insufficient as a matter of law due to defendant's failure to show due diligence and his failure to attach a supporting affidavit to his petition. We have jurisdiction to consider the instant appeal pursuant to Illinois Supreme Court Rule 304(b)(3) (eff. Feb. 26, 2010), which provides that "[a] judgment or order granting or denying any of the relief prayed in a petition under section 2-1401 of the Code of Civil Procedure" is immediately appealable. See *S.C. Vaughan Oil Co. v. Caldwell, Troutt & Alexander*, 181 Ill. 2d 489, 496-97 (1998) ("when a circuit court grants relief on a section 2-1401 petition, as the trial court did here, the appellate court has jurisdiction to review that decision under Rule 304(b)(3)").

Section 2-1401 "provides a comprehensive statutory procedure by which final orders, judgments, and decrees may be vacated 'after 30 days from the entry thereof.' " *Airoom*, 114 Ill. 2d at 220 (quoting Ill. Rev. Stat. 1983, ch. 110, ¶ 2-1401(a)). "[A] section 2-1401 petition can present either a factual or legal challenge to a final judgment or order. *** [T]he nature of the challenge presented in a section 2-1401 petition is critical because it dictates the proper standard of review on appeal." *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31.

Plaintiff suggests that, since the trial court granted the petition in the instant case on the pleadings alone, *de novo* review is appropriate. However, our supreme court has noted that the *de novo* review of a section 2-1401 petition is limited to the "specific niche" of section 2-1401 petitions "presenting a purely legal claim challenging a final judgment or order as void." *Warren County*, 2015 IL 117783, ¶ 49. In the case at bar, by contrast, defendant raises a factual challenge to the default judgment, namely, that under the factual circumstances of the case, plaintiff was not entitled to relief. Where the petition raises a factual challenge, "[t]o be entitled to relief under section 2-1401, the petitioner must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious

defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief." *Airoom*, 114 Ill. 2d at 220-21. "The quantum of proof necessary to sustain a section 2-1401 petition is a preponderance of the evidence." *Airoom*, 114 Ill. 2d at 221.

¶ 26 "Whether a section 2-1401 petition should be granted lies within the sound discretion of the circuit court, depending upon the facts and equities presented." *Airoom*, 114 Ill. 2d at 221. "In reviewing discretionary rulings by the trial court, an appeals court must look to the criteria on which the trial court should rely to determine if the trial court abused its discretion." (Internal quotation marks omitted.) *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 99 (2006). " '[A] trial court abuses its discretion if it fails to apply the proper criteria when it weighs the facts,' and a reviewing court 'must consider both the legal adequacy of [the] way the trial court reached its result as well as whether the result is within the bounds of reason.' " *Paul*, 223 Ill. 2d at 99 (quoting *People v. Ortega*, 209 Ill. 2d 354, 360 (2004)).

¶ 27 In the case at bar, the issue we must consider is whether defendant satisfied section 2-1401's requirement of due diligence. As noted, to prevail on a section 2-1401 petition, the petitioner must affirmatively set forth specific factual allegations supporting both the petitioner's "due diligence in presenting [a meritorious] defense or claim to the circuit court in the original action; and *** due diligence in filing the section 2-1401 petition for relief." *Airoom*, 114 Ill. 2d at 220-21. "No bright-line rule exists for judging whether a petitioner has acted diligently. Rather, due diligence is judged by the reasonableness of the petitioner's conduct under all of the circumstances." *Paul*, 223 Ill. 2d at 99-100.

¶ 28 Defendant makes a brief argument concerning his diligence in presenting his defense to the trial court and in his filing of the section 2-1401 petition. However, the bulk of his argument, both on appeal and before the trial court below, focuses on his assertion that he did not need to establish diligence because "[a] section 2-1401 petition *** invokes the equitable powers of the trial court, such that the court is not strictly bound by precedent and, where justice and good conscience require it, a default judgment may be vacated even though the requirement of diligence has not been satisfied." Defendant claims that the default judgment here should be vacated because it falls within this equitable exception.

¶ 29 Our supreme court has noted that "[o]ne of the guiding principles *** in the administration of section 2-1401 relief is that the petition invokes the equitable powers of the circuit court, which should prevent enforcement of a default judgment when it would be unfair, unjust, or unconscionable." *Airoom*, 114 Ill. 2d at 225. "Because a section 2-1401 petition is addressed to equitable powers, courts have not considered themselves strictly bound by precedent, and where justice and good conscience may require it[,] a default judgment may be vacated even though the requirement of due diligence has not been satisfied." *Airoom*, 114 Ill. 2d at 225.

¶ 30 "Relaxation of the due diligence requirement thereby entitling a defendant to a motion to vacate a judgment is justified only under extraordinary circumstances." *Ameritech Publishing of Illinois, Inc. v. Hadyeh*, 362 Ill. App. 3d 56, 60 (2005) (citing *All-Steel Employees Credit Union v. Singh*, 345 Ill. App. 3d 1005, 1008 (2004)); *Gonzalez v. Profile Sanding Equipment, Inc.*, 333 Ill. App. 3d 680, 686 (2002). "Although it is true that some decisions have relaxed or even excused the due diligence requirements, courts have only done so in the extraordinary circumstances where it is necessary to prevent an *unjust* entry of default judgment [citation], or where there is unconscionable conduct by the opposing party that would require that the due diligence requirement be relaxed [citation]." (Emphasis in original.) *Gonzalez*, 333 Ill. App. 3d

at 689. "[I]n each case there was evidence of fraudulent conduct by the plaintiff in procuring or concealing the judgment, or other unusual circumstances which made enforcement of the judgment unjust." *European Tanspa, Inc. v. Shrader*, 242 Ill. App. 3d 103, 108 (1993). Our supreme court has cautioned that, "[w]hile a liberal construction must be given to the petition to prevent an unjust result [citation], 'the ambit of section [2-1401] relief must not be overbroadened to such an extent that principles of equity and an ordered concept of justice are diluted' [citation]." *Airoom*, 114 Ill. 2d at 227 (quoting *Lammert v. Lammert Industries, Inc.*, 46 Ill. App. 3d 667, 676-77 (1977)).

¶ 31        In the case at bar, we cannot find that defendant has presented the type of extraordinary circumstances that warrant relaxation of the due diligence requirement. All of defendant's arguments are based on his allegedly meritorious defenses raised in the petition: (1) that plaintiff had been paid under defendant's workers' compensation settlement, (2) that plaintiff was seeking charges in excess of those permitted under the Workers' Compensation Act, and (3) that defendant contested the authenticity of the contract on which plaintiff's breach of contract claim relied. In other words, defendant essentially argues that because he has raised meritorious defenses, "equity, justice and good conscience clearly supported vacating the default judgment, notwithstanding any issue concerning due diligence." However, defendant's position would strip the due diligence requirement of any meaning because a meritorious defense is a *requirement* of a section 2-1401 petition. The mere assertion of a meritorious defense, without more, does not warrant relaxation of the due diligence requirement. Acceptance of defendant's argument would result in section 2-1401 relief being " 'overbroadened to such an extent that principles of equity and an ordered concept of justice are diluted' [citation]." *Airoom*, 114 Ill. 2d at 227 (quoting *Lammert*, 46 Ill. App. 3d at 676-77).

¶ 32        We note that none of the cases defendant cites in support of his argument concerning relaxation of the due diligence requirement is analogous to the situation present in the case at bar because they concern conduct of the plaintiff or the plaintiff's counsel in procuring an inequitable judgment. For instance, in *Halle v. Robertson*, 219 Ill. App. 3d 564, 570 (1991), the due diligence requirement was relaxed where (1) the plaintiff's counsel failed to inform the trial court that there had been prior discussions with defense counsel and that defense counsel was in court on the date that the default was entered; (2) there were problems with the prove-up hearing, including the incorrect recitation of evidence and a request for damages for which the plaintiff had already received compensation; and (3) the plaintiff failed to follow procedural rules, such as properly notifying the defendant of the entry of the default judgment in a timely manner or placing a garnishment summons for service in a timely manner. Similarly, in *Bonanza International, Inc. v. Mar-Fil, Inc.*, 128 Ill. App. 3d 714, 719-20 (1984), the appellate court found that equitable considerations required that the default judgment be vacated even in the absence of due diligence where the defendant's defense, "[i]f *** vindicated at trial," would call the conduct of the plaintiff into question because the plaintiff had presented an affidavit concerning the amount of damages at the prove-up hearing that would have been proven to be inaccurate. The *Bonanza International* court further found that the plaintiff's delay of more than 30 days after the entry of the default judgment before commencing citation proceedings, "although not enough in itself to render a default judgment unfair or unconscionable, has been held to cast a cloud on the proceedings." *Bonanza International*, 128

Ill. App. 3d at 720. See also *Elfman v. Evanston Bus Co.*, 27 Ill. 2d 609, 614 (1963)[5] (finding that "[t]he mere fact that a defendant is defaulted does not give to the plaintiff a right or claim to the assessment of damages unrelated to liability and, under the circumstances, here, it would appear that such an advantage was knowingly and intentionally taken of both defendant and the trial court").

¶ 33    In the case at bar, defendant attempts to paint his situation as similar to those in the cases in which the due diligence requirement has been relaxed by claiming that plaintiff "failed to even advise the trial court of its prior receipt of payment for its treatment from [defendant's] workers' compensation settlement." However, this is an allegation that has no basis in the record on appeal. Defendant is correct that plaintiff's complaint does not specifically mention the $27,003.59 that he claims plaintiff received from defendant's workers' compensation settlement. It does, however, refer to "credits for payments made by or on behalf of" defendant. Furthermore, defendant overlooks the fact that plaintiff would have been required to prove up the basis for its damages at a prove-up hearing. "[A] default judgment comprises two factors: (1) a finding of the issues for the plaintiff; and (2) an assessment of damages." *Wilson v. Teloptic Cable Construction Co.*, 314 Ill. App. 3d 107, 112 (2000). Even where there has been a default order entered, the plaintiff is still required to prove up its default damages. *City of Joliet v. Szayna*, 2016 IL App (3d) 150092, ¶ 53. In the case at bar, the record indicates that there was a prove-up hearing set for April 7, 2016, which was continued to April 15. There is no report of proceedings or other record of the prove-up hearing other than the trial court's entry of default judgment in the amount of $98,276.78. Thus, we have no way of knowing what evidence plaintiff presented as to its damages, other than our observation that plaintiff requested prejudgment interest in its complaint, which the trial court did not ultimately award. "Without an adequate record preserving the claimed error, the court of review must presume the circuit court's order conforms with the law." *People v. Carter*, 2015 IL 117709, ¶ 19. Moreover, "[t]his court presumes that a trial judge knows and follows the law unless the record affirmatively indicates otherwise." *In re Jonathon C.B.*, 2011 IL 107750, ¶ 72. In the case at bar, without any evidence in the record to suggest otherwise, we will not presume that plaintiff intentionally misled the trial court by misrepresenting any payments that it had received on defendant's behalf. Accordingly, the instant situation is entirely unlike the cases defendant cites, in which the plaintiff had engaged in improper conduct. Consequently, we find no basis for relaxation of the due diligence requirement.

¶ 34    As noted, defendant also makes a brief argument attempting to establish that he had exercised due diligence. However, we do not find this argument persuasive. "Due diligence requires the section 2-1401 petitioner to have a reasonable excuse for failing to act within the appropriate time." *Airoom*, 114 Ill. 2d at 222. "Specifically, the petitioner must show that his failure to defend against the lawsuit was the result of an excusable mistake and that under the circumstances he acted reasonably, and not negligently, when he failed to initially resist the judgment." *Airoom*, 114 Ill. 2d at 222.

---

[5]We note that this case was criticized for its application of an abuse of discretion standard of review in *People v. Vincent*, 226 Ill. 2d 1, 15 (2007). However, in *Warren County*, the supreme court clarified that an abuse of discretion standard of review for fact-based section 2-1401 petitions remains appropriate. *Warren County*, 2015 IL 117783, ¶ 52.

- 9 -

¶ 35    The record indicates that defendant was personally served with a copy of the summons and complaint on January 27, 2016, 14 days after the complaint was filed. According to defendant's reply in support of his section 2-1401 petition, "[defendant] admittedly did not take action when receiving summons and the Complaint. When the Complaint was filed, in January of 2016, [defendant] was consumed with his third party personal injury lawsuit, and believed [plaintiff's] medical bills had been satisfied because [plaintiff] chose to receive immediate repayment from [defendant's] worker' compensation award two years prior." On April 15, 2016, a default judgment was entered against defendant in the amount of $98,276.78 plus court costs. Defendant does not claim that he was unaware of this default judgment. According to an e-mail attached to defendant's reply, plaintiff's counsel sent defendant's counsel a copy of the financial responsibility statement, default order, and judgment order on October 5, 2016. According to defendant's section 2-1401 petition, on October 12, 2016, defendant settled his third-party personal injury lawsuit. Once he did so, according to his reply, defendant "fully became aware [plaintiff] was continuing [to] pursue satisfaction of outstanding payment." At that point, "[defendant] realized [plaintiff] was demanding repayment of nearly $100,000.00 and he reviewed the Contract at issue." Defendant claimed that "[i]mmediately after appreciating the fraudulent nature of the Contract and [plaintiff's] decision to ignore well-established Illinois law," defendant filed his section 2-1401 petition 15 days later.

¶ 36    We see nothing in the record on appeal to demonstrate due diligence on defendant's part, either in responding to the lawsuit initially or in filing his section 2-1401 petition. Defendant admittedly received the complaint and chose not to respond to it because he "was consumed with his third party personal injury lawsuit, and believed [plaintiff's] medical bills had been satisfied." Thus, defendant "had ample opportunity to avoid the default judgment by filing [his] answer or appearance" (*Airoom*, 114 Ill. 2d at 224), but chose not to do so. It was not until after defendant settled his third-party personal injury lawsuit for $800,000—which allegedly included the use of Dr. Michael's testimony and plaintiff's medical bills as evidence of defendant's damages—that defendant sought to vacate the default judgment under section 2-1401. Indeed, defendant claims that it was not until after the settlement of the third-party personal injury lawsuit that he even *reviewed* the financial responsibility statement attached to the complaint. " 'Relief under section [2-1401] is available only to those who diligently pursue their legal defenses and remedies in court, not to those who disregard these procedures on the gamble that better results can be obtained through other procedures or at a cheaper cost.' " *Airoom*, 114 Ill. 2d at 224 (quoting *Abbell v. Munfield*, 76 Ill. App. 3d 384, 388 (1979)). As our supreme court found in *Airoom*, in the case at bar, "[w]hen all of the circumstances of this case are viewed in their entirety, there is no doubt that [defendant's] dilemma is the result of [his] own negligence and indifference to or disregard of the circuit court's process." *Airoom*, 114 Ill. 2d at 224-25. Consequently, we must find that the trial court abused its discretion in granting defendant's section 2-1401 petition. See *European Tanspa*, 242 Ill. App. 3d at 107 (finding that "the court abused its discretion because defendants completely failed to establish due diligence").

¶ 37                                                    CONCLUSION

¶ 38    Defendant failed to show due diligence in presenting his defense to plaintiff's lawsuit or in filing his section 2-1401 petition, and there are no extraordinary circumstances warranting

relaxation of the due diligence requirement. Accordingly, the trial court abused its discretion in granting the section 2-1401 petition.

¶ 39        Reversed.