2020 IL App (1st) 190738-U

THIRD DIVISION
March 25, 2020

No. 1-19-0738

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| CINQUE ROBINSON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 D 630907 |
| | ) | |
| JANEEN D. GUAJARDO f/k/a JANEEN D. WATSON, | ) | Honorable |
| | ) | Sharon O. Johnson, |
| Respondent-Appellee. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The judgment of the circuit court of Cook County is affirmed; petitioner failed to provide a sufficient record to demonstrate the trial court abused its discretion in denying his petitions for relief from judgments denying his motion for a plenary order of protection and modifying the allocation of parental responsibilities; even had petitioner included a transcript of the hearing on the petitions in the record on appeal the outcome would remain the same because based on the arguments both on appeal and in the trial court petitioner only presented matters the trial court previously considered in support of his petitions to vacate judgments.

¶ 2    Petitioner, Cinque Robinson, filed separate petitions to vacate two judgments in his

ongoing dissolution proceedings with respondent, Janeen Guajardo (formerly known as Janeen

Watson).  The earlier judgment vacated an emergency order of protection Robinson obtained

against Watson in favor of their minor daughter and denied Robinson's motion for a plenary order of protection, and the later order denied Robinson's requested relief on a petition to modify custody but did reallocate parental responsibilities. For the following reasons, we affirm.

¶ 3                                              BACKGROUND

¶ 4       This appeal has its origins in a dissolution proceeding between petitioner, Cinque Robinson, and respondent, Janeen Guajardo, f/k/a Janeen Watson (Watson) (we will continue to refer to respondent as Watson only for purposes of continuity with our prior orders), that began in September 2006. This court previously touched upon the specific issues Robinson currently seeks to bring before this court in our last disposition of an appeal by Robinson from those ongoing proceedings. See *In re Marriage of Robinson and Watson*, 2018 IL App (1st) 172195-U (hereinafter, "the prior appeal"). The ongoing issues have surrounded custody of the parties' child, J.R.

¶ 5       On May 31, 2016, Robinson, acting *pro se*, filed a motion in the dissolution proceedings on behalf of J.R. for an order of protection against Watson. The trial court denied that motion on July 22, 2016. Robinson attempted to argue the denial of the motion for an order of protection in the prior appeal but we found that order was not before the court at that time. *Id.* The motion alleged as follows:

> "In summary on or about May 27, 2016 my daughter's *** mother violated court
> ordered visitation. During that violation, the mother (Janeen Watson) violated a
> court order to not use corporal punishment on [J.R.]. That court order was
> entered on January 8, 2015. Two police reports were filed by me. [J.R.] told me
> on May 30, 2016 that her mother whipped her with a belt on her back, buttocks on
> [*sic*] thighs."

The motion stated that Robinson "fears for safety of minor and further abuse." On the same day, the trial court entered an emergency order of protection and granted Watson supervised visits and telephone contact with J.R. The court extended the emergency order to, and set the matter for a hearing on, July 22, 2016. On July 22, 2016, the trial court entered an order stating that after a hearing on the record, the emergency order of protection is terminated. The same day the court entered an order of continuance for a status report on September 30, 2016, pending appeal.

¶ 6    In this appeal, Robinson claims that

> "[o]n July 22, 2016, [Watson] fully confessed to knowing there is an order prohibiting J.R.'s parents from hitting J.R. with the belt, and to intentionally violating that order by whooping J.R. with a belt on May 27, 2016, exactly as I accused her of, on behalf of J.R. The court ruled that the actions committed by [Watson,] which she fully confessed to, did not rise to the level of abuse as defined by the Domestic Violence Act. And as a result, I did not meet my burden of proof to obtain a plenary order of protection. The order of protection was terminated."

Robinson's brief then cites to the trial court's July 22, 2016 order.

¶ 7    On August 2, 2016, Robinson filed a motion "to reconsider and reinstate the interim order of protection pending hearing on reconsideration." Robinson's motion asked the trial court to reconsider its July 22, 2016 order and to reinstate the interim order of protection entered on an emergency basis on the grounds there were videotaped complaints by J.R. of "two separate incidents of battery" by Watson, "police reports and hospital records of the alleged incidents and court documents from court appointed evaluators citing behavior by J.R. associated with abuse— physical and sexual." The August 2016 motion to reconsider argued the court should reconsider

because it did not take into consideration the videotape and police and hospital reports. The motion asked the court to reconsider its judgment denying a plenary order of protection and to reinstate the interim order of protection. On August 5, 2016 the court set the matter for hearing on December 1, 2016.

¶ 8 On August 12, 2016, Robinson filed a notice of appeal from the August 5, 2016 order seeking to "overturn trial court's decision and enter a 2-year plenary order of protection due to child abuse against the minor child by [Watson.]" On September 30, 2016 the trial court entered an order of continuance until October 28, 2016 for a status report on the appeal. On October 28, 2016, the trial court granted Robinson's motion to waive transcript and subpoena fees and continued the matter for "status on appeal." On December 9, 2016 the trial court continued the matter to December 21, 2016 for "status report regarding ruling on motion to reconsider ***." The trial court entered two more orders continuing the matter for status on appeal, and on June 7, 2017, this court filed a mandate dismissing Robinson's appeal for want of prosecution.

¶ 9 The order at issue in the prior appeal denied Robinson's requested relief in his April 2014 original, and May 2015 amended, motion to modify custody but also ordered a change in the allocation of parental responsibilities. See *In re Marriage of Robinson and Watson*, 2018 IL App (1st) 172195-U, ¶ 23. After several continuances, on May 3, 2017, the trial court set the motion to modify custody for trial on August 28 and 29, 2017. On August 29, 2017, the trial court entered an order setting the matter on September 1, 2017 for entry of a final order after hearing and ordering the parties' parenting time. We laid out the proceedings leading up to and the allegations in the original and amended motions to modify custody resulting in the trial court's September 1, 2017 order in the disposition of the prior appeal. See *In re Marriage of Robinson and Watson*, 2018 IL App (1st) 172195-U. We dismissed the prior appeal because of Robinson's

"complete failure to comply with Illinois Supreme Court Rule 341." *Id.* ¶ 25. Nonetheless, we stated that, Robinson's "brief notwithstanding, we have carefully reviewed the record and we are cognizant of petitioner's claims, including that J.R.'s school performance and behavior improve when petitioner spends more time with her. Based on that review and the strong presumption afforded the trial court's ruling we cannot say that a manifest injustice has been done to J.R. by the trial court's September 1, 2017 order that is the subject of this appeal." *Id.* ¶ 24.

¶ 10      In the instant appeal, Robinson states that on July 17, 2018, he filed two separate petitions for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2018)). Robinson states he filed a petition for relief from the July 22, 2016 judgment denying his motion for an order of protection and a petition for relief from the September 1, 2017 judgment reallocating parental responsibilities. Robinson states the trial court heard both petitions on March 19, 2019. Robinson's brief before this court goes on to state as follows:

> "In the hearing on March 19, 2019 I made the same argument for both
>
> relief from both orders, that there is photographic evidence in the record of J.R.
>
> having been physically abused resulted in bruises, there is a video of J.R. accusing
>
> her mother of pushing her (J.R.) down a flight of stairs as a punishment and
>
> injuring J.R. in her crotch—a video that has never been seen by the court. I
>
> argued that J.R.'s poor conduct in school and her grades going from great to poor,
>
> along with [Watson] spending considerably less and less time with J.R. for
>
> anything, but especially to help J.R. with schoolwork, which was fully confessed
>
> by [Watson] at trial in 2017, constituted a substantial change in circumstances in
>
> both J.R. and [Watson,] by physical evidence and confession. And that the errors

made by the court in arriving at the judgments from which I sought relief were reversible.

In the process of making these arguments before the court in this Section 2-1401 hearing, [Watson] while arguing against the points I had made in my argument, admitted that she had previously abused J.R. When [Watson] finished her argument, I pointed out to the court that [Watson] had indeed admitted to abusing J.R., in fact, using those words. [Watson's] exact statement as shown in the transcript was, 'I have not abused her since the past.' [Watson] was speaking on the fact that I have been accusing [Watson] of abusing J.R. [The trial judge] acknowledged, on the record, that [Watson] had made that admission and noted in the order that 'additional findings were made on the record.' "

¶ 11    On August 8, 2018, the trial court entered an order continuing the matter for status on "modification of parenting time and motions to vacate." On November 26, 2018, Robinson filed a motion for expedited hearing on the petitions to vacate. On December 6, 2018 the trial court denied that motion. On January 17, 2019, the trial court entered an order setting a trial date of March 11, 2019 on the petitions to vacate the July 22, 2016 judgment and the September 1, 2017 judgment. On February 6, 2019, this court filed its mandate in the prior appeal.

¶ 12    On March 11, 2019, the trial court entered a written order. The written order states the matter had come before the court for hearing on Robinson's "Petition for Rule to Show Cause, motion to vacate this Courts [sic] September 1, 2017 order and his motion to vacate this Courts [sic] July 22, 2016 order." The March 2019 order states the court "considered the documentary evidence, testimony of one witness, and testimony and argument of the parties," both of whom

were self-represented. The written order, which is in the record on appeal, found and ordered as follows:

> "A. The Petition for Rule to Show Cause and Finding of Contempt against Janeen Watson was granted per separate order.
>
> B. Petitioner Cinque Robinson shall receive a credit of $100 toward his child support arrears and the Health and Family Services accounting department and or Illinois State Disbursement Unit shall adjust their records accordingly.
>
> C. Petitioner did not meet his burden of proving that said orders should be vacated pursuant to 735 ILCS 2-1401 as he did not demonstrate due diligence in presentment of the claim, diligence in filing the motion to vacate, and that he had a meritorious claim.
>
> D. Additional findings were made on the record.
>
> E. Petitioner' [*sic*] motions to vacate the September 1, 2017 and July 22, 2016 orders are hereby DENIED."

In a separate order the court found Watson in indirect civil contempt for not making J.R. available for parenting time on a particular date.

¶ 13    Robinson now appeals the trial court's March 11, 2019 order denying his section 2-1401 petitions for relief from the July 22, 2016 judgment denying his motion for an order of protection and the September 1, 2017 judgment denying his requested relief and reallocating parenting time.

¶ 14                                ANALYSIS

¶ 15    Section 2-1401 of the Code provides a mechanism to obtain relief from final orders or judgments "after 30 days from the entry thereof." 735 ILCS 5/2-1401(a) (West 2018).

Specifically, "[s]ection 2-1401 of the Code allows a court to vacate a final judgment after more than 30 days." *U.S. Bank, National Ass'n as Trustee for Credit Suisse First Bos. CSFB 2005-11 v. Laskowski*, 2019 IL App (1st) 181627, ¶ 15. "The petition must be supported by affidavit or other appropriate showing as to matters not of record." 735 ILCS 5/2-1401(b) (West 2018).

> "The purpose of a section 2-1401 petition 'is to bring before the court matters of fact which were unknown at the time the judgment was entered, and if known, would have affected or altered the judgment.' [Citation.] A petition pursuant to section 2-1401 invokes the equitable powers of the court as justice and fairness require. [Citation.] To be entitled to relief under section 2–1401, a petitioner must affirmatively set forth specific factual allegations supporting: (1) the existence of a meritorious claim or defense; (2) due diligence in presenting this claim or defense to the circuit court in the original action; and (3) due diligence in filing the section 2–1401 petition for relief." *In re Marriage of Breyley*, 247 Ill. App. 3d 486, 490-91 (1993).

"The trial court has discretion whether to grant a section 2-1401 petition, and we will not disturb the court's judgment absent an abuse of that discretion." *In re Custody of Ayala*, 344 Ill. App. 3d 574, 582 (2003).

¶ 16    Section 610.5 of the Illinois Marriage and Dissolution of Marriage Act states as follows:

> "Unless by stipulation of the parties or except as provided in Section 603.10 of this Act, no motion to modify an order allocating parental decision-making responsibilities, not including parenting time, may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously

his or her mental, moral, or physical health or significantly impair the child's

emotional development. Parenting time may be modified at any time, without a

showing of serious endangerment, upon a showing of changed circumstances that

necessitates modification to serve the best interests of the child." 750 ILCS

5/610.5 (West 2018).

Nonetheless, relief pursuant to section 2-1401 may be available to Robinson if there is newly

discovered evidence to support the petition. "Grounds for relief under section 2-1401 have

traditionally included *** newly discovered material evidence where the evidence could not

have reasonably been discovered at the time of judgment and is so conclusive it probably would

change the result [citation])." *In re Marriage of Hamm-Smith*, 261 Ill. App. 3d 209, 214 (1994).

¶ 17    In this appeal, Robinson argues the trial court erroneously denied J.R. an opportunity to

testify, and disregarded Watson's confession to punishing J.R. by hitting her with a belt in

violation of a court order that "[n]either parent is to use corporal punishment on the minor in

particular no belt is to be used to spank the minor." Robinson's brief states:

"I argued that Judge Kubalanza [(the trial judge who entered the order

regarding corporal punishment)] intended to liberally apply the purpose of the

[Domestic Violence] Act to expand the civil remedies as a way to support the

victim of domestic violence, because she could not discern by the evidence and

arguments presented, who was responsible for abusing J.R. So, she entered an

order prohibiting both parents form hitting J.R. with a belt so as to prevent

physical abuse, at least by that method since both parties argued that J.R.'s bruises

were the result of hitting her (J.R.) with a belt. And both parents admitted to

occasionally whooping J.R. with a belt as a reasonable redirect. But, it is clear that someone was excessive in their redirect."

Robinson argues that Watson's admission could not have been known at the time of the hearings on the motion for an order of protection or for a change in allocation of parenting responsibilities. Robinson also argued that had those admissions been made during "those hearings, or at least at the first of those two hearings," their outcome would have been different. Robinson asserts that Watson's admission along with the other evidence (photographs of J.R.'s bruises, the timing of the discovery of those bruises, and Watson's violation of the "no corporal punishment" court order while interfering with Robinson's visitation) would have been "enough to obtain an order of protection *** and for [him] to obtain majority parenting time."

¶ 18     In response to the trial court's finding of a lack of diligence, Robinson asserts on appeal that he first learned of the existence of section 2-1401 in 2018 a few months before he filed his petitions for relief from judgment but he still "presented my petitions for relief from voidable orders within the within the two-year statute of limitations." Robinson also writes on appeal: "In terms of the individual claims I presented in my Section 2-1401 petitions, they were made in each of the individual hearings whose judgments I sought relief from."

¶ 19     Robinson included a transcript of the hearings on the 2-1401 petitions, held on March 11, 2019, in the appendix to his appellant's brief. That transcript is not included in the record on appeal. Nor are the petitions themselves contained in the record. The record contains only the trial court's written order quoted above.

¶ 20     In the prior appeal we admonished:

"This deficiency [in appellant's brief] is compounded in this appeal by the fact that plaintiff failed to provide a sufficiently complete record on appeal. '[T]o

- 10 -

support a claim of error on appeal the appellant has the burden to present a sufficiently complete record.' *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001). 'Where the issue on appeal relates to the conduct of a hearing or proceedings, this issue is not subject to review absent a report or record of the proceeding. Instead, absent a record, "it [is] presumed that the order entered by the trial court [is] in conformity with the law and had a sufficient factual basis." [Citation.]' *Id.* (quoting *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984)). Where the record lacks information of the evidence presented at a hearing, 'it is presumed that the court heard adequate evidence to support the decision that was rendered unless the record indicates otherwise. [Citation.]' (Internal quotations omitted.) *Id.* at 433 (quoting *Skaggs v. Junis*, 28 Ill. 2d 199, 201-02 (1963)). In this case, petitioner failed to include a transcript of the evidence presented at the hearing on the petition in this case. Plaintiff did procure the portion of the transcript representing the trial court's ruling, but that transcript is not included in the record on appeal. Instead, petitioner included it in the appendix to his appellant's brief. 'Attachments to briefs not included in the record are not properly before the reviewing court and cannot be used to supplement the record.' *Zimmer v. Melendez*, 222 Ill. App. 3d 390, 394-95 (1991). Therefore, the transcript of the trial court's oral ruling cannot be considered. See *Oruta v. B.E.W. and Continental*, 2016 IL App (1st) 152735, ¶ 32." *In re Marriage of Robinson and Watson*, 2018 IL App (1st) 172195-U, ¶ 20.

¶ 21    Similarly, here, the transcript of the hearings on March 11, 2019 is not included in the record on appeal and cannot be considered. *Kimble v. Illinois State Board of Education*, 2014 IL

App (1st) 123436, ¶ 70 n4 ("this transcript is not contained in the record on appeal and therefore is not considered on appeal."); *In re Baby Girl F.*, 402 Ill. App. 3d 127, 129 n1 (2008) ("Two documents that appear in Krystal's appendix, attorney Patton's petition for guardianship and the transcripts of the June 19, 2006, proceedings, do not appear in the record on appeal. Therefore, we cannot consider them. [Citation.]").

¶ 22    Under the circumstances, we are required to find that the trial court's judgment is correct.

"Our supreme court has long recognized that to support a claim of error, the appellant has the burden to present a sufficiently complete record. [Citation.] 'From the very nature of an appeal it is evident that the court of review must have before it the record to review in order to determine whether there was the error claimed by the appellant.' [Citation.] 'An issue relating to a circuit court's factual findings and basis for its legal conclusions obviously cannot be reviewed absent a report or record of the proceeding.' [Citation.] Without an adequate record preserving the claimed error, the court of review must presume the circuit court's order had a sufficient factual basis and that it conforms with the law. [Citation.]

'[W]hen the record on appeal is incomplete, a reviewing court should actually "indulge in every reasonable presumption favorable to the judgment from which the appeal is taken, including that the trial court ruled or acted correctly." ' [Citations.] This presumption even operates to the extent that where the record lacks information of evidence presented at a hearing, a reviewing court will not assume none was heard and that the court's order, therefore, was improper. [Citation.] Instead, ' "it [will] presume[ ] that the court heard adequate evidence

to support the decision that was rendered" unless the record indicates otherwise.' [Citations.]" *Gataric v. Colak*, 2016 IL App (1st) 151281, ¶¶ 29-30.

¶ 23   We do not have a transcript of the proceedings in which Watson allegedly made the admission or a transcript of the hearing on Robinson's petition based on that alleged admission. The trial court's March 11, 2019 order states the court "considered the documentary evidence, testimony of one witness, and testimony and argument of the parties." We must presume that whatever the trial court considered about Watson's alleged admission during the hearing on the petition, its finding that Robinson failed to demonstrate a meritorious claim had adequate evidentiary support.

¶ 24   Moreover, in his brief to this court Robinson stated: "In terms of the individual claims I presented in my Section 2-1401 petitions, they were made in each of the individual hearings whose judgments I sought relief from." The only matter Robinson argues is "not of record" that would have "precluded rendition of the judgment in the original action" is Watson's alleged admission to violating the trial court's order that neither party use corporal punishment against J.R. The record contains no "appropriate showing" of that alleged admission. Regardless, Robinson claims Watson made the admission on July 22, 2016, *during* the hearing on the motion for plenary order of protection, and the hearing on the petition to modify the allocation of parental responsibilities occurred over a year later on August 28 and 29, 2017.

> "Relief under section 2-1401 is predicated on the showing of a defense or claim that would have precluded rendition of the judgment in the original action as well as diligence in both discovering the defense or claim and presenting the petition. [Citation.] The petition must be supported by affidavit or other appropriate showing as to matters *not of record* and must be filed no later than

two years after the entry of the contested order or judgment. [Citation.]"

(Emphasis added.) *Price v. Philip Morris, Inc.*, 2015 IL 117687, ¶ 23.

" '[A] party may not avail himself of th[is] remedy *** "unless he shows that through no fault or negligence of his own, the *** existence of a valid defense was not made to appear to the trial court. [Citations.] Such a *** petition is not intended to relieve a party from the consequences of his own mistake or negligence." [Citation.]' " *Solomon v. Arlington Park/Washington Park Race Track Corp.*, 78 Ill. App. 3d 389, 397 (1979), quoting *Esczuk v. Chicago Transit Authority*, 39 Ill. 2d 464, 467 (1968). The confession was admittedly available to Robinson in the prior proceedings. The record does not contain evidence that any failure to present it, if there was such a failure, was not due to his own fault or negligence.

¶ 25 Concerning Robinson's diligence or lack thereof, we note that Robinson stated that "[o]n July 22, 2016, [Watson] fully confessed to knowing there is an order prohibiting J.R.'s parents from hitting J.R. with the belt, and to intentionally violating that order by whooping J.R. with a belt on May 27, 2016." Not only was that information available at the August 2017 hearing on the motion to modify custody, but Robinson did not file his petition for relief from the September 1, 2017 judgment on the basis of Watson's alleged admission (over a year earlier) until July 17, 2018, almost a year after the judgment was entered and more than two years after the alleged admission.

¶ 26 "No bright-line rule exists for judging whether a petitioner has acted diligently. Rather, due diligence is judged by the reasonableness of the petitioner's conduct under all of the circumstances." *Illinois Neurospine Institute, P.C. v. Carson*, 2017 IL App (1st) 163386, ¶ 27. Additionally, "[a] *pro se* litigant is held to the same standards as a litigant represented by an attorney." *Williams v. Department of Human Services Division of Rehabilitative Services*, 2019

IL App (1st) 181517, ¶ 30. "Although it is true that some decisions have relaxed or even excused the due diligence requirements, courts have only done so in the extraordinary circumstances where it is necessary to prevent an unjust entry of default judgment [citation], or where there is unconscionable conduct by the opposing party that would require that the due diligence requirement be relaxed [citation]." (Emphasis omitted.) *Carson*, 2017 IL App (1st) 163386, ¶ 30. Here, despite Robinson's assertion he only learned of the existence of 2-1401 relief shortly before filing his petition, that is no excuse, and we have no evidence of what the trial court heard about Robinson's "conduct under all of the circumstances," particularly his conduct, if any, in seeking to obtain relief.

¶ 27    Based on the record before us, we cannot say the trial court abused its discretion in denying Robinson's petitions for relief from judgment.

¶ 28    Having reached our conclusion about the required outcome of this case we will note that in the interest of ensuring a just outcome, we read the transcript of the proceedings on March 11, 2019 included in the appendix to Robinson's brief. The hearing began with Robinson's petition to vacate the July 22, 2016 judgment denying his motion for an order of protection. Robinson argued that during the hearing on the plenary order of protection, Watson admitted violating the trial court's order by disciplining J.R. with a belt. Robinson argued he was seeking relief from the July 22 judgment because the trial court did not allow J.R. to testify in the hearing on the plenary order of protection, the court heard other evidence of abuse—specifically J.R.'s videotaped statement that her mother did punish her by hitting her with a belt—during the hearing, and allowing the judgment to stand would be unjust.

¶ 29    In response, Watson argued the July 22 order should not be vacated "because everything was said and done. I have not punished her that way, using corporal punishment, ever since."

Robinson asserted that Watson admitted that "she did indeed whoop our daughter on that day in violation of that court order." Watson responded "I did not say that. I said that I whooped her in the past. There's a difference." The trial court took Watson's response as an objection and sustained that objection.

¶ 30    The hearing then proceeded to Robinson's argument in support of his petition to vacate the September 1, 2016 judgment. Robinson argued the judgment "should be vacated because, again, I was not allowed—I was not able to bring up the abuse situation which could be used, could be talked about, in the hearing for allocation of parental responsibilities because my daughter was not allowed to testify to the abuse against her." Robinson then re-asserted matters from the hearing on the motion to change custody, including his arguments regarding J.R.'s behavior and grades, arguments he made at the prior hearing, and the trial court's rulings following that hearing. Robinson said the biggest issue is that J.R. did not testify at the hearing. Watson agreed the trial court should question J.R.

¶ 31    Following arguments, the trial court ruled as follows:

> "Sir, motions to vacate are brought before the Court to bring to the Court's attention information that was not available at the time that if the Court had been aware of it that it may have changed the Court's decision. It's not an additional opportunity to try to get a rehearing of the same evidence that *** was available at the time of the hearing. And being available is different from failing to present it or it not being admissible at the time based on your lack of knowledge of the rules of evidence or civil procedure.

So your argument today with respect to the motions to vacate the 9/1/2017 as well as the July 22, 2016 orders seem to be more appropriate for a motion to reconsider, which had to be filed within 30 days of the entry of the order.

* * *

With respect to the respondent's alleged admission of abuse, that admission did not take place during the hearing on the petition for order of protection before me.

* * *

I do recall that my ruling was that the law allows for reasonable redirection of a child and that what occurred I did not feel rose to the level of abuse.  And if you wanted to enforce the order that prohibited any corporal punishment whatsoever, that there was another avenue available to you, but I would not grant the order of protection.

* * *

What I believe happened was that at the time that Judge Kubalanza entered the order of protection and the subsequent—or emergency order of protection, I believe it was, and the subsequent order prohibiting corporal punishment, that maybe there was a statement to that effect made at that time. But at the time of the hearing here before me for the subsequent petition for order of protection—because there were multiple ones, but for the subsequent one that is at issue here today, there was no statement wherein she admitted, 'I abused my daughter.'

* * *

Section 214.01 requires *** that in order to succeed on a 214.01 petition, the petitioner must set forth specific factual allegations showing the existence of a meritorious claim, demonstrate due diligence in presenting the claim to the Court, and act with due diligence in filing the 214.01 petition.

* * *

I'm saying you did not argue that. You argued that the Court made an error and—that the Court made an error in *** its consideration of the evidence presented, and *** the Court should have ruled differently, but I don't believe that you have met your burden with respect to a 214.01. There's no new evidence here. I think that all of the evidence that you presented was certainly available to you at that time. You *** didn't like the ruling, but that's not the purpose for a 214.01.

You also filed the motion to vacate the July 22, 2016 motion just shy of two years. I'm not sure why it wasn't brought sooner. Therefore, I don't find that you were necessarily diligent in bringing the petition or that you may have a meritorious defense or you may have had one; however, based on the evidence that was presented at the time, I didn't find that it warranted the entry of an order of protection ***. And I felt that the order that was entered at that time, meaning the parenting schedule, was appropriate, given the evidence that was presented at the trial."

¶ 32    Robinson argued to the trial court that he had just learned of section 2-1401. The court responded: "You were aware of the court orders when they were entered. And so at that time perhaps you could have done research or hired an attorney or gone to the law library, but you

learned about it I assume, happenstance and thought, oh, I'll go file that in my case.  But, ***

that's not how we practice law here.  ***  So I'm denying on both motions the vacatur." "

¶ 33    The trial court proceeded with Watson's failure to comply with the parenting schedule,

which is not a subject of this appeal.  Following a hearing and arguments, the trial court found

that Watson's failure to comply with the parenting schedule on one date was contumacious and a

reckless disregard for the schedule.

¶ 34    If the transcript of the hearing on March 11, 2019, had been included in the record, our

review would not yield a different result.  Based on Robinson's own statements on appeal we

find the trial court properly found that Robinson failed to present any matter that was not known

to the trial court at the time the judgments were entered or that was not available to Robinson.

¶ 35    We would reach the same result based on Robinson's arguments at the hearing on the

petitions.  "A section 2-1401 petition allows a party to bring before the trial court matters that, if

known at the time of judgment, would have precluded its entry.  [Citation.]  However,

postjudgment review is not to be used to relitigate matters that were or could have been raised on

direct appeal or to relieve a party of its own mistakes or negligence."  *Sunderland ex rel. Poell v.*

*Portes*, 324 Ill. App. 3d 105, 111 (2001).  See also *In re Marriage of Travios*, 218 Ill. App. 3d

1030, 1036 (1991) (finding that evidence that could reasonably have been discovered prior to the

entry of the judgment would require court to affirm dismissal of section 2-1401 petition absent

fraud).  Based on the transcript included in the appendix to Robinson's appellant's brief, we

would find that Robinson's petitions merely sought to relitigate matters that had already been

presented to the trial court.  This is an improper basis for section 2-1401 relief, and the trial court

properly denied the petitions.

¶ 36    For all of the foregoing reasons, we hold the trial court did not abuse its discretion in denying Robinson's petitions.

¶ 37                            CONCLUSION

¶ 38    For the foregoing reasons, the circuit court of Cook County is affirmed.

¶ 39    Affirmed.