MID-AMERICA FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff, v. ROBERT J. KOSIEWICZ *et al.*, Defendants-Appellees (Paul Javaras *et al.*, Intervenors-Appellants).

Second District No. 2—87—0797

Opinion filed May 23, 1988.

Herbert J. Bell, of Downers Grove, for appellants.

Botti, Marinaccio, DeSalvo & Pieper, Ltd., and John N. Pieper, of Law Offices of John N. Pieper, both of Oak Brook, for appellees.

JUSTICE DUNN delivered the opinion of the court:

Intervenors, Paul Javaras and Frank Skach, appeal the judgment of the circuit court granting the motion of defendant, Robert Kosiewicz, to quash summons and set aside a judgment of foreclosure entered against him. Intervenors contend that the sheriff's return of summons was valid on its face and that the court therefore erred in permitting defendant to attack collaterally the judgment of foreclosure. We reverse and remand.

Defendant, his late wife, Shirley, and their two children formerly resided on the subject property. On October 24, 1984, plaintiff, Mid-America Federal Savings and Loan Association, filed a complaint to foreclose the mortgage against defendants Robert and Shirley Kosiewicz. On November 4, 1984, Du Page County deputy sheriff Joseph Brancato personally served Shirley Kosiewicz at the family residence. The return of service signed by Brancato also reflects substituted service on Robert Kosiewicz by leaving copies of the summons and complaint with his wife. Neither defendant appeared, and the court entered a default judgment of foreclosure and sale on December 17, 1984. Intervenors purchased the property at a sheriff's sale on January 29, 1985. The redemption period expired without defendant Robert Kosiewicz appearing or challenging the sale.

Intervenors obtained a writ of assistance against defendants. On January 4, 1986, Skach went to the Kosiewicz residence to inform defendants of the writ. That same day Shirley Kosiewicz was found dead of an apparently self-inflicted gunshot wound.

On March 27, 1986, Robert Kosiewicz (hereinafter referred to as defendant) filed a special and limited appearance, along with a petition pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401) seeking to vacate the judgment of foreclosure. The basis of the petition was that the court had no jurisdiction to enter the orders complained of because defendant had never been served with process.

The court initially denied defendant's petition. On defendant's motion for reconsideration, the court conducted an evidentiary hearing. At the hearing, Brancato testified that on November 4, 1984, he served two summonses and two complaints on Shirley Kosiewicz. He did not specifically recall his conversation with Shirley Kosiewicz on that date, but stated on cross-examination that he normally would have explained the contents of the papers to the person upon whom he served them. He testified that he did not personally mail copies of the summons and complaint to defendant and did not observe anyone else do so.

Anthony Heying testified that he is the office manager of the civil division of the Du Page County sheriff's office. He stated that in the case of substituted service, it was the policy of the office that the actual mailing was done by a woman in the office. Theresa Bucholz testified that it is generally her responsibility to process papers returned by the sheriff's deputies for mailing. She did not have a specific recollection of addressing an envelope to Robert Kosiewicz, but identified a notation on the summons as being in her handwriting and indicating that the papers had been mailed. She does not personally put stamps on the envelopes, but merely puts them in a mail basket in the office. She does not have any personal knowledge of whether stamps are ever placed on the envelopes or if they are ever deposited in a United States mailbox.

Defendant's affidavit submitted in connection with the petitions states that he never had any knowledge of the pendency of the foreclosure action and never received any copies of the summons and complaint from his wife. Defendant first learned of the proceedings when Skach informed him on January 4, 1986, that he had purchased the property at a judicial sale and was preparing to take possession. Defendant's affidavit also states that his wife committed suicide without ever informing him of the proceedings or the default. Defendant

avers that he is currently able to cure the default and redeem the property. Based on this evidence, the trial court granted defendant's motion, quashed the summons, and vacated the judgment of foreclosure.

The intervenors appeal, contending the trial court erred in ordering an evidentiary hearing and subsequently granting defendant's petitions. They argue that, as *bona fide* purchasers of the property, they are immune from collateral attack upon the judgment unless the jurisdictional defect appears on the face of the record. They contend that the sheriff's return is not facially defective, thus precluding defendant's challenge. Defendant responds that the return is defective in several ways, in that (1) it does not affirmatively state that it was Deputy Brancato who mailed the summons to defendant; (2) it does not definitively state that it was mailed to Robert J. Kosiewicz, but rather recites that it was sent to "defendant Kosiewicz, Robert J. and Shirley A."; (3) it does not state that the summons was sent in a sealed envelope with postage fully prepaid; and (4) "[p]erhaps most importantly, the return does not on its face reflect that two copies of the summons and two copies of the complaint were in fact, delivered to Shirley A. Kosiewicz on November 4, 1984."

█ Normally, a judgment may be attacked at any time by a necessary party who does not have notice. But where defects are not apparent from the record and a *bona fide* purchaser has intervened, the necessary party will be precluded from attacking the otherwise void judgment. (*City of Rockford v. Lemar* (1987), 157 Ill. App. 3d 350, 352-53, 510 N.E.2d 128; *Uptown Federal Savings & Loan Association v. Vasavid* (1981), 94 Ill. App. 3d 531, 534, 418 N.E.2d 831.) Since it is undisputed that intervenors are *bona fide* purchasers of the subject property, we must carefully examine the return to determine whether any defects are apparent upon its face.

In granting defendant's petition, the trial court relied on *State Bank v. Thill* (1986), 113 Ill. 2d 294, 497 N.E.2d 1156. In *Thill*, defendant wife had, without the knowledge of her husband, allowed the mortgage on their home to go into default. When plaintiff began foreclosure proceedings, defendant husband was purportedly served by substituted service left with the wife. The wife never told the husband about the foreclosure proceedings, and the husband subsequently sought to vacate the judgment of foreclosure on the basis that he never received notice. The supreme court found that the return of service was defective in several respects:

> "First, the affidavit of service does not show that any summons was served, noting only service of a complaint. Second,

the affidavit fails to show that an additional copy of the summons was left with Nancy Thill for the defendant. Finally, and most importantly, the affidavit is defective because it does not affirmatively recite that a copy of the summons was subsequently mailed in a sealed envelope with postage fully prepaid to the defendant at the Pebble Creek Drive address. Accordingly, we must hold that these defects appearing on the face of the affidavit of service rendered the return defective. (*Thill*, 113 Ill. 2d at 311.)

We think the return in the instant case is not subject to the same criticisms as the *Thill* return.

Defendant's attack on the return attempts to show that it was facially defective. However, under the *Thill* analysis, the question is whether a third-party purchaser at a judicial sale would reasonably be put on notice that there was a jurisdictional defect in the underlying proceedings. The instant return in no way evidences such a defect.

■ Defendant first complains that the return does not affirmatively state that Deputy Brancato himself mailed copies of the summons and complaint to defendant. Defendant bases his objection on the statement in *Thill* that in order to establish proper substituted service, the return must affirmatively state "that the officer or other authorized person making service sent a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his usual place of abode." (*Thill*, 113 Ill. 2d at 310.) The court, in turn, took the mailing requirement from section 2—203 of the Code of Civil Procedure, which authorizes abode service. (Ill. Rev. Stat. 1985, ch. 110, par. 2—203.) The Code essentially provides two steps for obtaining valid abode service: leaving a copy with a member of the household over 13 years of age and mailing a copy to the defendant at this address. The statute merely provides that "the officer or other authorized person making service" send a copy to the defendant. Nothing in the statute or in *Thill* requires that the authorized person serving the summons and the authorized person mailing the copy must be the same person, and we will not impose such a requirement. The testimony of the sheriff's department employees reveals an efficient system for serving and mailing notice, in which different employees take sole responsibility for different aspects of the process. Defendant has failed to demonstrate how requiring Deputy Brancato to have mailed the additional copy personally would have materially increased the chances of defendant receiving notice of this action. The sheriff is the public official charged with the duty of serving summonses within the county, and, absent clear statutory language, we

will not interfere with his judgment as to the best method of carrying out this statutory duty.

Defendant's second contention is that the return is defective for failing to specify that the copy was sent to defendant Robert J. Kosiewicz personally, rather than defendant jointly with his wife. Defendant's fourth contention is that it does not reflect on its face that two copies of the summons and complaint were left with Shirley Kosiewicz on November 4, 1984. These contentions require a careful scrutiny of the return, a copy of which is set forth as appendix I immediately following this opinion. First of all, the computer-generated form clearly states that it relates to "two services, same address." Thus, two documents were clearly contemplated. Below that, two boxes are checked:

"1 PERSONAL SERVICE: BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT WITH THE NAMED DEFENDANT PERSONNALLY [sic].

2 SUBSTITUTE SERVICE: BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT AT THE ABOVE ABODE WITH SOME PERSON OF THE FAMILY, OF THE AGE OF 13 YEARS OR UPWARDS, AND INFORMING THAT PERSON OF THE CONTENTS THEREOF. ALSO, A COPY OF THE SUMMONS WAS MAILED TO THE DEFENDANT AT THE ABOVE ADDRESS."

These two paragraphs are clearly intended to be read in the conjunctive. They describe two different sets of documents, one given to Shirley Kosiewicz personally and one left with her for Robert Kosiewicz. Since there is no question that Shirley Kosiewicz was personally served, the second paragraph, describing abode service, must refer to Robert Kosiewicz. The second paragraph also states that a copy was mailed to "the defendant" at the above address. Since the only defendant referred to in the second paragraph is defendant Robert J. Kosiewicz, the second sentence must refer to him as well. Applying proper rules of grammar, as well as common sense, to the language of the return reveals both that two copies of the summons and complaint were left with Shirley Kosiewicz and that additional copies were mailed to defendant Robert J. Kosiewicz.

Defendant's third objection to the return is that it does not affirmatively state that the copies were sent to the defendant in a sealed envelope with postage fully prepaid. As noted previously, the return states, "A copy of the summons was mailed to the defendant at the above address." Black's Law Dictionary provides that a letter or other matter is "mailed" when it is "properly addressed, stamped

with the proper postage, and deposited in a proper place for receipt of mail." (Black's Law Dictionary 858 (5th ed. 1979).) This is not a technical, legalistic definition. A person of ordinary intelligence, on seeing the word "mailed," would assume that the summons had been placed in a sealed envelope with proper postage affixed and sent to the defendant at his proper address. Such a person would not be put on notice that service was somehow defective.

Defendant also contends that the return is invalid because it contains, in red ink, the notation "MC 11-5-84 TB." Defendant maintains that this notation "further confuses an already vague computerized form." We have already determined that the return conveys all the necessary information to establish valid service, and we fail to see how the addition of this brief notation renders the service invalid. Theresa Bucholz, a sheriff's department employee, testified that she made the notation and that it means that she was responsible for mailing the complaint on November 5, 1984. The letters "TB" are her initials. As we have determined that the complaint need not be mailed by the same person who left the complaint at the defendant's house, this cryptic notation in no way invalidates the attempted service.

We note that defendant alleges only that he did not receive notice. He does not argue that the papers were never left with his wife or were never in fact mailed, or that the return contains false statements. The statute provides that a private party may pursue a civil contempt remedy against an officer who knowingly files a false return (Ill. Rev. Stat. 1985, ch. 110, par. 2—203(c)), but the defendant apparently has not done so. We conclude that the return of service filed by Deputy Brancato was not facially defective.

■ Intervenors contend that since the return was not facially defective, and since it is undisputed that they were *bona fide* purchasers of the property, the court erred in holding an evidentiary hearing to permit defendant to further impugn the attempted service. Defendant responds that the intervenors have waived this contention. Defendant relies on the following colloquy between Herbert Bell, the intervenors' attorney, and the court, to argue that the intervenors waived the issue by consenting to the hearing:

"THE COURT: In view of the statute *** I feel that unless it can be stipulated that the—inserting of the initials on the notation on the affidavit indicate[s] that the summons was, in fact, sent by someone else—unless that can be stipulated to, there'll have to be an evidentiary hearing to establish the facts.

MR. BELL: So I guess what your honor is saying, that you would—you're suggesting that perhaps there be an evidentiary

hearing to determine in fact, whether or not their motion to vacate should be granted.

Is that what you're are saying?

THE COURT: Yes. Yes.

MR. BELL: I don't have any trouble with that."

A closer examination of the record does not support defendant's contention.

In oral argument before the trial court, defendant's attorney had emphasized that the notation in red (because it was in different handwriting) indicated that someone other than Brancato had mailed the summons and complaint to defendant. Bell argued that this was permissible under the statute. The trial judge, however, stated his belief that *Thill* required that the abode service and subsequent mailing be made by the same person. Defendant's attorney asked the intervenors to stipulate to the fact that abode service and mailing were performed by two different individuals and to let the court decide the issue as a matter of law on that basis. Bell stated that he had insufficient information to make such a stipulation, and the trial court indicated that it would be necessary to hold an evidentiary hearing on the issue. Given the trial court's stated predisposition on the legal question and Bell's inability to make a stipulation, counsel for the intervenors had little choice but to assent to the court's decision to hold a hearing. Given that the intervenors consistently maintained that the distinction was irrelevant, it would be inappropriate to apply the waiver rule in this situation. It was improper for the court to hold a hearing to permit defendant to challenge the facially valid service against *bona fide* purchasers of the property. *City of Rockford v. Lemar* (1987), 157 Ill. App. 3d 350, 352-53, 510 N.E.2d 128; Ill. Rev. Stat. 1985, ch. 110, par. 2—1401(e).

■ Even if the intervenors waived the issue, however, nothing in the record persuades us that the attempted service was in fact defective. The object of service is to notify a party of pending litigation and thus secure his presence. (*In re Marriage of Wilson* (1986), 150 Ill. App. 3d 885, 887, 502 N.E.2d 447.) In the case of personal service, the sheriff's return of summons is *prima facie* proof of proper service which can only be overcome by clear and convincing evidence, and the court is required to indulge every reasonable presumption in favor of the sheriff's return. (*Mitchell v. Tatum* (1982), 104 Ill. App. 3d 986, 988, 433 N.E.2d 978; *Aetna Casualty & Surety Co. v. Sanders* (1973), 15 Ill. App. 3d 573, 575, 305 N.E.2d 25.) For the court to acquire jurisdiction, the return must show service in some manner provided by law. (*State Bank v. Thill* (1985), 135 Ill. App. 3d

747, 754, 481 N.E.2d 1215, *aff'd* (1986), 113 Ill. 2d 294, 497 N.E.2d 1156; *Escue v. Nichols* (1948), 335 Ill. App. 244, 247, 81 N.E.2d 652.) The same presumption of validity does not attach to substituted service as to personal service. (*Thill*, 113 Ill. 2d at 309; *Sullivan v. Bach* (1981), 100 Ill. App. 3d 1135, 1139, 427 N.E.2d 645.) Substitute service requires strict compliance with all the statutory requirements. *Thill*, 113 Ill. 2d at 309; *Werner v. W. H. Shons Co.* (1930), 341 Ill. 478, 482, 173 N.E. 486.

■ Nothing in the testimony of Brancato and Bucholz impeaches the information on the face of the return. Brancato testified that he personally served Shirley Kosiewicz on November 4, 1984, and left additional copies of the summons and complaint with her for her husband. Although he testified that he did not specifically remember explaining the contents of the papers to Mrs. Kosiewicz, it was his standard practice to do so. Defendant did not present any evidence that Brancato did not in fact explain the papers on that particular occasion. (*Cf. Tomaszewski v. George* (1953), 1 Ill. App. 2d 22, 27, 116 N.E.2d 88 (deputy did not think he mailed copies to defendant).) Even in the case of substituted service, the sheriff's return is evidence that he has performed the acts recited therein, and the party challenging the service has the burden of presenting contradictory affidavits or personal testimony. (*Thill*, 113 Ill. 2d at 312.) Later, Bucholz identified her initials on the return and stated that this indicated the copies had been prepared for mailing. She testified that she did not mail them personally, but, again, defendant presented no testimony that the papers were not in fact mailed. The fact of mailing may be established without direct testimony from the person who actually performed the mailing if corroborating circumstances are otherwise sufficient. (*Tabor & Co. v. Gorenz* (1976), 43 Ill. App. 3d 124, 131, 356 N.E.2d 1150.) In *First National Bank v. Guerra Construction Co.* (1987), 153 Ill. App. 3d 662, 505 N.E.2d 1373, a bank officer testified as to the standard procedure for mailing notices, and a secretary testified that she had prepared the specific notice in question and left it in the box for outgoing mail. Although no one testified to actually having mailed it, the court found sufficient evidence that the notice had in fact been sent. *First National Bank*, 153 Ill. App. 3d at 668.

In the instant case, Anthony Heying testified about the office's standard procedure for mailing complaints and summonses. Bucholz testified that she prepared the specific papers in question. Defendant presented no evidence that they were not mailed. Under these circumstances, defendant's evidence does not contradict any of the assertions on the face of the return indicating valid service.

■ Defendant further contends that if he is barred from challenging the judgment of foreclosure by way of a section 2—1401 petition, then the statutory scheme is unconstitutional as applied in that it deprives him of property without due process of law. (U.S. Const., amend. V; Ill. Const. 1970, art. I, §2.) Defendant relies on a number of Supreme Court decisions which establish that notice and an opportunity to be heard are fundamental elements of procedural due process. These cases, however, do not support defendant's position.

Section 2—1401(e) provides as follows:

"Unless lack of jurisdiction affirmatively appears from the record proper, the vacation or modification of an order or judgment pursuant to the provisions of this Section does not affect the right, title or interest in or to any real or personal property of any person, not a party to the original action, acquired for value after the entry of the order or judgment but before the filing of the petition, nor affect any right of any person not a party to the original action under any certificate of sale issued before the filing of the petition, pursuant to a sale based on the order or judgment." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401(e).)

Defendant challenges this section as applied as depriving him of property without due process of law. A fundamental aspect of due process is that no person should be deprived of liberty or property "without opportunity, at some time, to be heard." (*Joint Anti-Fascist Refugee Committee v. McGrath* (1951), 341 U.S. 123, 162, 95 L. Ed. 817, 848, 71 S. Ct. 624, 643; (Frankfurter, J., concurring).) The Court has also stated that, at a minimum, due process requires that a deprivation of property be proceeded by notice and an opportunity for hearing. *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 313, 94 L. Ed. 865, 872-73, 70 S. Ct. 652, 656-57.

In *Mullane*, however, the Court noted that personal service is not an indispensable element of that right. Rather, notice need only be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action. (*Mullane*, 339 U.S. at 314, 94 L. Ed. at 873, 70 S. Ct. at 657.) " 'The criterion is not the possibility of conceivable injury, but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.' " *Mullane*, 339 U.S. at 315, 94 L. Ed. at 873, 70 S. Ct. at 657, quoting *American Land Co. v. Zeiss* (1911), 219 U.S. 47, 67, 55 L. Ed. 82, 97, 31 S. Ct. 200, 207.

In the instant case, the notice was reasonably calculated to reach defendant under all the circumstances. As the Appellate Court for the

First District has recognized, regarding section 2—203 and similar statutes:

> " 'Such statutes presuppose that such a relationship of confidence exists between the person with whom the copy is left and defendant that notice will reach defendant; they assume that such person will deliver the process or copy to defendant or in some way give him notice thereof.' " *Anchor Finance Corp. v. Miller* (1956), 8 Ill. App. 2d 326, 330, 132 N.E. 2d 81, quoting 72 C.J.S. *Process* §48.

In adopting section 2—203, the legislature made a judgment that substituted, or abode, service was reasonable under these circumstances and provided numerous safeguards, such as requiring that the person with whom the papers are left be over the age of 13 and be a family member and that copies of the papers be mailed to defendant. (Ill. Rev. Stat. 1985, ch. 110, par. 2—203(a).) We cannot say that, under the unusual facts of this case, the method selected was not reasonably calculated to reach defendant. As the Supreme Court noted:

> " 'Now and then an extraordinary case may turn up, but constitutional law like other mortal contrivances, has to take some chances, and in the great majority of instances no doubt justice will be done.' " *Mullane*, 339 U.S. at 319, 94 L. Ed. at 876, 70 S. Ct. at 660, quoting *Blinn v. Nelson* (1911), 222 U.S. 1, 7, 56 L. Ed. 65, 68, 32 S. Ct. 1, 2.

Furthermore, we note that this section and similar provisions in other statutes have been on the books for many years and have never before been held unconstitutional. The policy of protecting *bona fide* purchasers has long been followed in Illinois. (Ill. Ann. Stat., ch. 110, par. 2—1401(e), Committee Comments, at 603-04 (Smith-Hurd 1983); *Vyverberg v. Vyverberg* (1923), 310 Ill. 599, 606, 142 N.E. 191; see also *Southmoor Bank & Trust Co. v. Willis* (1959), 15 Ill. 2d 388, 155 N.E.2d 308.) Given the reasonableness of the notice used under the circumstances, and the protection traditionally afforded *bona fide* purchasers, we cannot say that the statute as applied to defendant is unconstitutional.

The judgment of the circuit court quashing summons and vacating the judgment of foreclosure and sale is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

LINDBERG, P.J., and INGLIS, J., concur.

031

DOCKET NUMBER 184-503 092917  CASE NUMBER 04C0953   001  DEPUTY 065
                    ORIGIN 001
DATE FILED 10-24-84  DATE RECEIVED 10-29-84  DTE DATE 11-23-84  NO. OF SERVICES 0:

DEFENDANT KOSIEWICZ, ROBERT J. (AND) SHIRLEY A.

HOME ADDR 5812 1/2 SHERMAN        DOWNERS GROVE, IL

WORK ADDR

PLAINTIFF MID-AMER FED S & L ASSN
SERVICE INFO FK - 2 SERVICES, SAME ADDRESS

x*xxxxx xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx**x*x*x*
(A) I CERTIFY THAT I SERVED THIS SUMMONS ON THE DEFENDANT AS FOLLOWS:

    1 PERSONAL SERVICE: BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT WITH THE
      NAMED DEFENDANT PERSONNALLY.
      src 11-5-84 TB
    2 SUBSTITUTE SERVICE: BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT AT THE
      ABOVE ABODE WITH SOME PERSON OF THE FAMILY, OF THE AGE OF 13 YEARS OR UP-
      WARDS, AND INFORMING THAT PERSON OF THE CONTENTS THEREOF, ALSO, A COPY OF
      THE SUMMONS WAS MAILED TO THE DEFENDANT AT THE ABOVE ADDRESS.
      SAID PARTY REFUSED NAME ___ ___

    3 SERVICE ON: CORPORATION___ COMPANY___ BUSINESS___ PARTNERSHIP___
      · BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT (OR INTERROGATORIES) WITH
        THE REGISTERED AGENT, AUTHORIZED PERSON OR PARTNER OF THE DEFENDANT.

(B) RICHARD PAUL DORIA, SHERIFF, BY: _____, DEPUTY

    1 SEX F M/F   RACE W   AGE 39   HT___   WT___ wife
    2 WRIT SERVED ON Shirley Kosiewicz RELATION wife

    THIS 4 DAY OF Nov , 1984 TIME 2.50 AM/PM

ADDITIONAL _____
COMMENTS   _____
xxxxxxxxxxxxxxxxxxxxxxxxxx xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx*x*x*x

THE NAMED DEFENDANT WAS NOT SERVED.

    TYPE OF BLDG ___ ___ ___ ___ ___ ___            ATTEMPTED SERVICES

NEIGHBORS NAME _____       DATE      TIME  AM/PM

    ADDRESS _____        _____  ___:___ ___

    REASON NOT SERVED:                         _____  ___:___ ___

___01 MOVED          ___06 NO SUCH ADDRESS     _____  ___:___ ___
___02 NO CONTACT     ___07 EMPLOYER REFUSAL
___03 EMPTY LOT      ___08 RETURNED BY ATTY    _____  ___:___ ___
___04 NOT LISTED     ___09 DECEASED
___05 WRONG ADDRESS  ___10 BLDG DEMOLISHED     _____  ___:___ ___

                                               _____  ___:___ ___

AMOUNT RECEIVED   28.60        APPENDIX I