2023 IL App (1st) 220599-U

No. 1-22-0599

Third Division
December 13, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

|  |  |  |
|---|---|---|
| JASON HOUSE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| v. | ) | |
| | ) | No. 2019 L 013759 |
| ALI OTHMAN and SCOTT BERMAN, | ) | |
| | ) | The Honorable |
| Defendants | ) | Mary Colleen Roberts, |
| | ) | Judge Presiding. |
| (Ali Othman, | ) | |
| Defendant-Appellee). | ) | |
| | ) | |

_____

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and R. Van Tine concurred in the judgment.

**ORDER**

¶ 1     *Held:*  The circuit court's grant of defendant's section 2-1401 petition is reversed where defendant was properly served via substitute service and failed to provide any evidence indicating that he had demonstrated due diligence in responding to the original lawsuit and in filing the section 2-1401 petition.

¶ 2     In 2019, plaintiff Jason House entered into a real estate contract with defendant Ali Othman for the purchase of a multi-unit residential property. Defendant allegedly breached the contract,

and plaintiff filed suit against defendant and the attorney representing defendant in the transaction, codefendant Scott Berman (Berman). After neither defendant filed an appearance, the circuit court ultimately entered default judgment against both defendants. Over a year later, defendant filed a motion to vacate the default judgment pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2020)), which the circuit court granted over plaintiff's objection. Plaintiff now appeals, claiming that the circuit court erred in granting the section 2-1401 petition. For the reasons that follow, we reverse.

¶ 3                                    BACKGROUND

¶ 4       According to the complaint filed in the instant case, plaintiff and defendant entered into a real estate contract in July 2019 for the sale of a four-unit residential property in Chicago; defendant was represented by Berman in connection with the sale. Shortly before the closing, defendant agreed to provide confirmation of the number of legal units for the property, as the purchase price was based on the property being legally zoned as four units. At the closing, however, defendant informed plaintiff that the property was zoned for only three units. Consequently, the parties entered into an agreement at the closing (the escrow agreement) which required that (1) defendant procure a zoning certificate indicating that the property was zoned for four units, (2) defendant deposit $20,000 in escrow to Berman immediately after receipt of the sale proceeds, (3) Berman as escrowee would pay plaintiff $1100 per month if defendant failed to procure the zoning certificate, and (4) if defendant was unable to procure the zoning certificate by the end of November 2019, Berman as escrowee would release the balance of the funds held in escrow to plaintiff. Defendant, however, failed to procure the four-unit zoning certificate and Berman failed to release the $20,000 held in escrow. As a result, plaintiff filed a lawsuit in the circuit court of Cook County against both defendant and Berman,

alleging two counts of breach of contract against defendant (one for the real estate contract and one for the escrow agreement) and breach of fiduciary duty against Berman.

¶ 5       According to an affidavit of service filed by the sheriff's office of Cook County, defendant was served by substitute service on January 2, 2020, "by leaving a copy of the summons and complaint at the defendant's usual place of abode with a family member or person residing there, 13 years or older, and informing that person of the contents of the summons. Also, a copy of the summons was mailed to the defendant at his or her usual place of abode on the 02 day of January 2020." Berman was served by personal service on February 26, 2020.

¶ 6       Neither defendant filed an appearance and, in July 2020, plaintiff filed a motion for default. The circuit court granted plaintiff's motion in October 2020, and continued the matter for prove-up on damages. On December 16, 2020, the circuit court entered judgment in favor of plaintiff and against defendant in the amount of $154,000 plus attorney fees, for a total judgment of $157,617.52. The circuit court also entered judgment in favor of plaintiff and against Berman in the amount of $20,000, in addition to $5000 in punitive damages, for a total judgment of $25,000. Plaintiff issued multiple citations to discover assets with respect to both defendants between April and August 2021 but was unsuccessful in serving them. Plaintiff ultimately served defendant by posting the citation to his door, as well as mailing it, in October 2021. In November 2021, the circuit court entered a rule to show cause as to defendant's noncompliance with the citation.

¶ 7       In January 2022, defendant filed an appearance, as well as a section 2-1401 petition for relief from judgment. In his petition, defendant claimed that the circuit court "[i]nexplicably" awarded plaintiff a judgment of nearly $158,000, which plaintiff could never have recovered based on the allegations of the complaint and, therefore, defendant was entitled to vacate the

default judgment. Specifically, defendant contended that the entry of judgment against him was improper where the failure to provide a four-unit zoning certificate was not a breach of either the real estate contract or the escrow agreement and, even if it was, plaintiff waived such a breach where he proceeded to close on the property despite the absence of the zoning certificate. Defendant further claimed that he exercised his best efforts to obtain a four-unit zoning certificate, so there was no intentional or material breach of the escrow agreement. Finally, defendant argued in the alternative that he had substantially performed under the real estate contract and, in any event, plaintiff would be limited to $20,000 in damages. Defendant also contended that, since these defects were apparent on the face of the complaint, he was not required to show diligence in bringing his petition. To the extent that the court found otherwise, however, defendant claimed that he had shown diligence, as he did not become aware of the matter until a default judgment had been entered against him and an alias citation to discover assets had been posted.

¶ 8    In response, plaintiff filed a motion to dismiss defendant's section 2-1401 petition, contending that defendant had failed to demonstrate due diligence, as the petition was not based on an error of law on the face of the record but instead was based on "ordinary, factual defenses." Plaintiff noted that defendant did not contest that he was properly served by substitute service but merely claimed "for reasons left unexplained" that he did not receive a copy of the summons or complaint and remained unaware of the lawsuit for over 18 months after he had been served. Plaintiff further noted that Berman, defendant's codefendant, had been personally served and continued to represent defendant in real estate transactions after the date of service and claimed that "[d]efendant wants this court to simply assume and accept that he was diligent, without even explicitly denying the obvious that his attorney must have

4

discussed the fact a lawsuit had been filed against both of them and was proceeding to default and judgment not just once but multiple times in the months the case remained pending." Finally, plaintiff pointed out that while defendant claimed he had not become aware of the lawsuit until the alias citation was posted in October 2021, he had, in fact, signed for the copy of the alias citation sent by certified mail in September 2021.

¶ 9        After considering the parties' arguments, the circuit court entered an order granting defendant's section 2-1401 petition. First, the court found that defendant's petition was "substantively a motion to quash," as defendant alleged that he had not been made aware of the proceedings against him. The circuit court found that the affidavit of service filed by the sheriff's office was "not conclusive of service" on defendant, as "there is no indication that the Complaint was later mailed to [defendant's] residence as required to effectuate service." The court accordingly found that defendant had "stated a valid basis to quash service and to vacate the default judgment against him."

¶ 10        The circuit court additionally found that defendant's petition satisfied all the requirements to be entitled to relief under section 2-1401 of the Code. While the court "disagree[d]" with defendant's contention that he was not required to establish due diligence, the circuit court nevertheless found that defendant had demonstrated due diligence in both responding to the claims against him and in filing his section 2-1401 petition. The circuit court noted that defendant alleged that he became aware of the matter in October 2021, and filed the instant petition four months after that discovery. While the court observed that such a delay could "normally" show a lack of due diligence, in this case, "the Court is inclined to be lenient given that many are still adjusting to the COVID-19 pandemic" and consequently found that the four-month delay was not unreasonable. The circuit court further found that defendant had asserted

a meritorious defense to plaintiff's claims, as defendant had alleged that plaintiff's recovery exceeded the amount permitted under the contract. Finally, the court found that "as the Court prefers to adjudicate cases on the merits, the Court at its discretion sees no reason to deny [defendant's] Section 2-1401 Petition." Accordingly, the circuit court granted defendant's section 2-1401 petition to vacate the default judgment and denied plaintiff's motion to dismiss the petition. Plaintiff timely filed a notice of appeal, and this appeal follows.

¶ 11                                                    ANALYSIS

¶ 12    On appeal, plaintiff contends that the circuit court erred in granting defendant's section 2-1401 petition where (1) defendant was properly served and (2) defendant failed to establish due diligence in filing his petition. Plaintiff further argues that, before the circuit court granted the petition, it should have conducted an evidentiary hearing, as plaintiff was challenging the facts alleged in the petition.

¶ 13    Section 2-1401 of the Code "provides a comprehensive statutory procedure by which final orders, judgments, and decrees may be vacated 'after 30 days from the entry thereof.' " *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220 (1986) (quoting Ill. Rev. Stat. 1983, ch. 110, ¶ 2-1401(a)). A section 2-1401 petition can present either a factual or legal challenge to a final judgment or order. *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. "Although a section 2-1401 petition is ordinarily used to bring facts to the attention of the trial court which, if known at the time of judgment, would have precluded its entry [citation], a section 2-1401 petition may also be used to challenge a purportedly defective judgment for legal reasons [citation]." *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 94 (2006). The nature of the challenge presented in a section 2-1401 petition is "critical," as it dictates the proper standard of review on appeal. *Warren County*, 2015 IL 117783, ¶ 31.

¶ 14   Where the petition raises a factual challenge, the petitioner must affirmatively set forth specific factual allegations demonstrating (1) the existence of a meritorious defense or claim, (2) due diligence in presenting the defense or claim to the circuit court in the original action, and (3) due diligence in filing the section 2-1401 petition. *Airoom*, 114 Ill. 2d at 220-21. "The quantum of proof necessary to sustain a section 2-1401 petition is a preponderance of the evidence." *Airoom*, 114 Ill. 2d at 221. "Whether a section 2-1401 petition should be granted lies within the sound discretion of the circuit court, depending upon the facts and equities presented." *Airoom*, 114 Ill. 2d at 221.

¶ 15   By contrast, where a section 2-1401 petition raises a purely legal challenge to a judgment, review of the petition is *de novo*. *Warren County*, 2015 IL 117783, ¶ 47. Moreover, if the petition is based on an allegation that the underlying judgment is void, the "general rules" pertaining to section 2-1401 petitions do not apply. *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 104 (2002). Instead, our supreme court has explained that "[p]etitions brought on voidness grounds need not be brought within the two-year time limitation. Further, the allegation that the judgment or order is void substitutes for and negates the need to allege a meritorious defense and due diligence." *Sarkissian*, 201 Ill. 2d at 104; see also *Warren County*, 2015 IL 117783, ¶ 48.

¶ 16                                   *Validity of Service*

¶ 17   In this case, plaintiff's first contention of error is his claim that the circuit court incorrectly found that defendant was not properly served. Our supreme court has found that a section 2-1401 petition challenging service represents a purely legal challenge on voidness grounds, as defective service of process deprives the circuit court of personal jurisdiction over the

defendant. See *Sarkissian*, 201 Ill. 2d at 105; *Warren County*, 2015 IL 117783, ¶ 48. Accordingly, we review the circuit court's grant of defendant's petition on this basis *de novo*.

¶ 18    As noted, defendant was served in the instant lawsuit through substitute service. Section 2-203 of the Code governs service on individuals and provides, in relevant part, that an individual may be served "by leaving a copy [of the summons] at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the contents of the summons, provided the officer or other person making service shall also send a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode." 735 ILCS 5/2-203(a)(2) (West 2018).

¶ 19    Here, the affidavit of service filed by the sheriff's office averred that the deputy sheriff (1) left a copy of the summons and complaint with a white male identified as "Safine Othman," approximately aged 48, at "the defendant's usual place of abode" at 5:20 p.m. on January 2, 2020, and (2) mailed a copy of the summons on the same date to the same address. This affidavit serves as *prima facie* evidence of service with respect to the above facts, which were within the personal knowledge of the officer making the return, and "can only be set aside by clear and satisfactory evidence." *Nibco, Inc. v. Johnson*, 98 Ill. 2d 166, 172 (1983). Importantly, defendant did not claim before the circuit court—and does not now claim—that the sheriff's office visited the incorrect address or that the individual served was not "some person of the family or a person residing there, of the age of 13 years or upwards." 735 ILCS 5/2-203(a)(2) (West 2018). Accordingly, defendant was properly served, and the circuit court therefore had personal jurisdiction over him. See *In re J.B.*, 2018 IL App (1st) 173096, ¶ 32 (a court may obtain jurisdiction over a defendant through substitute service).

¶ 20    While we acknowledge that the circuit court found otherwise, we cannot agree with its conclusion. In its order, the circuit court found that "there is no indication that the Complaint was later mailed to [defendant's] residence as required to effectuate service." The affidavit of service, however, provides that in addition to leaving a copy of the summons and complaint at defendant's "usual place of abode," "a copy of the summons was mailed to the defendant at his or her usual place of abode on the 02 day of January 2020." Section 2-203(a) of the Code provides that "[t]he certificate of the officer or affidavit of the person that he or she has sent the copy in pursuance of this Section is evidence that he or she has done so." 735 ILCS 5/2-203(a) (West 2018)*. We therefore presume that the deputy sheriff, in fact, mailed a copy of the summons to the address listed on the affidavit of service (which, again, defendant does not claim is an incorrect address). See *Alvarez v. Feiler*, 174 Ill. App. 3d 320, 324-25 (1988) (finding that an affidavit of service which provided that " 'a copy of the summons was mailed to the defendant at the above address' " complied with the requirements of section 2-203(a)).

¶ 21    To the extent that the circuit court's conclusion was based on the fact that the affidavit indicates that a copy of the *summons* was mailed to defendant's address, not the summons *and complaint*, we note that section 2-203(a)(2) requires only the mailing of the summons, not the complaint, in order to effectuate service. See 735 ILCS 5/2-203(a)(2) (West 2018) (substitute service on an individual includes the requirement that "the officer or other person making service shall also send a copy of the *summons* in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode" (emphasis added)). Consequently, we find no error in the affidavit of service and must disagree with the circuit court's conclusion that "defects appear on the face of the Sheriff's Affidavit" which provide a basis to vacate the default judgment against defendant.

¶ 22    We are similarly unpersuaded by defendant's contention that his affidavit, which he attached to his section 2-1401 petition, provides a basis for finding that he was not validly served. Defendant is correct that facts which are not within a process server's personal knowledge may be denied in an affidavit by the defendant and, if such an affidavit is not rebutted, "that part of the affidavit attacking those recitals in the return which are beyond the personal knowledge of the officer would be taken as true." *Nibco*, 98 Ill. 2d at 173; *Abbington Trace Condominium Ass'n v. McKeller*, 2016 IL App (2d) 150913, ¶ 12. In this case, however, defendant's affidavit does not challenge any of the facts contained in the affidavit of service. Instead, the only allegations in his affidavit concerning service—and the sole contention raised in his section 2-1401 petition on the matter—were that he did not receive a copy of the summons and complaint, and did not become aware of the existence of the lawsuit until after the default judgment had been entered against him. Defendant was not served through personal service, however, but through substitute service, which is "service on a defendant that involves service on another person." *In re J.B.*, 2018 IL App (1st) 173096, ¶ 32. Of course, statutes permitting substitute service presuppose a relationship between the defendant and the person accepting the service such that the defendant will be apprised of the service. See *Mid-America Federal Savings & Loan Ass'n v. Kosiewicz*, 170 Ill. App. 3d 316, 327 (1988). The fact remains, however, that section 2-203 sets forth several ways in which service on an individual may be made, and defendant was properly served in accordance with the terms of the statute, despite his assertions as to when he obtained actual knowledge of the lawsuit. Consequently, there was no basis for granting the section 2-1401 petition due to defective service.

¶ 23                                    *Merits of Petition*

¶ 24        While we have determined that defendant's claims regarding service did not constitute a basis for granting his section 2-1401 petition, the circuit court's order in the instant case also found that the petition should be granted based on its merits. Thus, if we agree with the circuit court's conclusion as to this issue, we will affirm the circuit court's grant of defendant's section 2-1401 petition. See *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992) (we may affirm on any basis appearing in the record).

¶ 25        As an initial matter, the parties disagree as to the proper standards to be applied in consideration of defendant's claims. Plaintiff argues that the *Airoom* standards apply, requiring defendant to demonstrate (1) the existence of a meritorious defense or claim, (2) due diligence in presenting the defense or claim to the circuit court in the original action, and (3) due diligence in filing the section 2-1401 petition. *Airoom*, 114 Ill. 2d at 220-21. By contrast, defendant contends that, since his challenge is based on legal errors apparent from the face of the complaint, he was not required to show diligence. See *Aurora Loan Services, LLC v. Pajor*, 2012 IL App (2d) 110899, ¶ 19.

¶ 26        Defendant's position is based on his claim that his petition was in the nature of a bill of review, which does not require a showing of diligence. As noted, section 2-1401 petitions encompass both factual challenges and legal challenges to underlying judgments. See *Warren County*, 2015 IL 117783, ¶ 31; *Paul*, 223 Ill. 2d at 94. One type of legal challenge available under section 2-1401 is one which is in the nature of a bill of review. *Pajor*, 2012 IL App (2d) 110899, ¶ 15. Our supreme court has explained that, prior to the enactment of section 2-1401 and its predecessor, bills of review were available "for the purpose of obtaining relief from decrees for error apparent upon the face of the record." *Collins v. Collins*, 14 Ill. 2d 178, 183

(1958). Such a remedy was available "only for an error of law apparent on the record," such as where the decree was contrary to a rule of law or statutory provision. *Id.* More recently, our colleagues in the Second District have suggested that the proper test to apply in considering bill-of-review-based section 2-1401 petitions is determining whether "the trial court's ruling was legally inconsistent with the undisputed facts." *Pajor*, 2012 IL App (2d) 110899, ¶ 21; see also *Hanson v. De Kalb County State's Attorney's Office*, 391 Ill. App. 3d 902, 911 (2009). As a purely legal challenge, no showing of diligence is required (*Pajor*, 2012 IL App (2d) 110899, ¶ 19; *Harris Bank, N.A. v. Harris*, 2015 IL App (1st) 133017, ¶ 59), and our review is *de novo* (*Pajor*, 2012 IL App (2d) 110899, ¶ 21; *Warren County*, 2015 IL 117783, ¶ 47).

¶ 27    In this case, we cannot find that defendant's section 2-1401 petition was in the nature of a bill of review but instead agree with the circuit court that it was a fact-dependent challenge subject to the *Airoom* requirements. Defendant's petition essentially alleged that plaintiff failed to state a claim for breach of contract, based on the allegations of the complaint and the exhibits attached thereto. This is not the kind of claim in which courts have found bills of review to be appropriate; all of the cases cited by defendant before the circuit court and on appeal involve situations in which the undisputed facts established the judgment entered by the lower court was in direct contravention of a statute. See *Pajor*, 2012 IL App (2d) 110899, ¶ 22 (mortgagee failed to strictly comply with statutory requirements of a complaint to foreclose); *Hanson*, 391 Ill. App. 3d at 911 (convicted felon was barred from obtaining firearm owner's identification card); *Collins*, 14 Ill. 2d at 183-84 (statutory period of "habitual drunkenness" was impossible based on length of marriage). See also *Van Dam v. Van Dam*, 21 Ill. 2d 212, 217-18 (1961) (noting that the error in *Collins* "was not the result of mistaken judgment, but rather was the granting of relief contrary to, and in direct violation of[,] statutory enactment"). Defendant has

cited no cases in which a bill-of-review-type analysis has been applied in the context of challenging a simple breach of contract action.

¶ 28      Moreover, here, the facts are not undisputed. Defendant points to facts which are alleged in the complaint but are arguably not supported by the exhibits to the complaint, contending that they show that plaintiff cannot succeed on his breach of contract claim. While defendant is correct that, for instance, the real estate contract attached to the complaint does not expressly mention four units, that does not necessarily mean that the parties' agreement did not include such a term. Neither the real estate contract nor the escrow agreement contains an integration clause, so it is possible that prior communications could have established additional consistent terms of the agreement, especially where the real estate contract is altogether silent as to the number of units contained in the building and where the escrow agreement specifically references a four-unit zoning certificate. See *J&B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 162 Ill. 2d 265, 275 (1994) (where contract was silent as to completion date, circumstances including the absence of an integration clause demonstrated that the contract did not represent entire agreement of the parties). Indeed, defendant himself established that the contract attached to the complaint did not represent the entire agreement between the parties—as an exhibit to his section 2-1401 petition, he attached written modifications to the contract which were agreed to during the attorney review period. Defendant also raised a number of factual defenses to plaintiff's claims, including waiver and his alleged exercise of his "best efforts" to obtain four-unit zoning, and also challenged the circuit court's damages calculation, which occurred only after a prove-up hearing and therefore necessarily requires the consideration of facts outside the four corners of the complaint itself. See *Illinois Neurospine Institute, P.C. v. Carson*, 2017 IL App (1st) 163386, ¶ 33 (a default judgment

requires both a finding of liability and an assessment of damages). These defenses further highlight the factual issues at play in resolving plaintiff's claims.

¶ 29     "[T]he issues of whether a contract existed, the parties' intent in forming it, and its terms are all questions of fact to be determined by the trier of fact." *Prignano v. Prignano*, 405 Ill. App. 3d 801, 810 (2010). Similarly, whether a material breach of a contract has occurred is a question of fact. *Direct Auto Insurance Co. v. O'Neal*, 2022 IL App (1st) 211568, ¶ 15. It may well be the case that plaintiff's complaint, as presently drafted, contains deficiencies—that is not the question before us, however. As noted, a bill of review is meant for "an error of law apparent on the record" (*Collins*, 14 Ill. 2d at 183), where "the trial court's ruling was legally inconsistent with the undisputed facts" (*Pajor*, 2012 IL App (2d) 110899, ¶ 21). We cannot say that is the case here and, accordingly, agree with the circuit court that defendant's petition raises a fact-based challenge, in which he was required to establish diligence. See *Harris Bank*, 2015 IL App (1st) 133017, ¶ 60 (finding that section 2-1401 petition did not raise a purely legal error where the plaintiff presented fact-dependent challenges to the circuit court's judgment).

¶ 30     As noted, where a section 2-1401 petition raises a fact-dependent challenge, the petitioner is required to allege facts establishing (1) the existence of a meritorious defense or claim, (2) due diligence in presenting the defense or claim to the circuit court in the original action, and (3) due diligence in filing the section 2-1401 petition. *Airoom*, 114 Ill. 2d at 220-21. In this case, plaintiff challenges only the circuit court's finding as to defendant's diligence, contending that defendant failed to establish his diligence or that, at a minimum, the circuit court should have held an evidentiary hearing before granting defendant's petition.

¶ 31    First, we cannot find that an evidentiary hearing was required in the instant case. Where the facts alleged in a section 2-1401 petition are challenged by the respondent, a "full and fair evidentiary hearing must be held." *Id.* at 223. Here, however, plaintiff did not "challenge" the facts alleged in the petition (see *id.*), but instead filed a section 2-615 motion to dismiss the petition as insufficiently pled. A section 2-1401 petition constitutes a separate and independent action from the original proceeding. *Warren County*, 2015 IL 117783, ¶ 31. Accordingly, proceedings under section 2-1401 are subject to "the usual rules of civil practice." *People v. Vincent*, 226 Ill. 2d 1, 8 (2007). As with any pleading, where it fails to state a cause of action or shows on its face that the petitioner is not entitled to relief, it is subject to a motion to dismiss. *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273, 279-80 (1982); *La Rabida Children's Hospital & Research Center v. Harrison*, 263 Ill. App. 3d 790, 796 (1994).

¶ 32    In this case, plaintiff's motion to dismiss contended that defendant had failed to allege sufficient facts to establish diligence. To the extent that plaintiff's motion challenged the veracity of defendant's facts, it did so through unsupported skepticism and by pointing to an envelope containing an alias citation to discover assets which defendant signed for on September 13, 2021. Other than that, plaintiff did not attach any exhibits or otherwise challenge any of defendant's allegations as to the date he obtained actual knowledge of the lawsuit, or his allegations as to his course of conduct after receiving such actual knowledge.[1] Thus, we cannot find that plaintiff's limited challenge to defendant's factual allegations required an evidentiary hearing.

---

[1] While plaintiff did attach exhibits to his motion to dismiss the section 2-1401 petition, they consisted of the proof of substitute service, the various notices of motions and alias citations to discover assets which plaintiff's counsel had mailed to defendant's address, and several warranty deeds which Berman appears to have prepared on defendant's behalf.

¶ 33    Even in the absence of an evidentiary hearing, however, we agree with plaintiff that defendant's allegations failed to establish diligence in responding to the lawsuit and in filing his section 2-1401 petition. Whether a section 2-1401 petition should be granted "lies within the sound discretion of the circuit court, depending upon the facts and equities presented." *Airoom*, 114 Ill. 2d at 221. Accordingly, we will reverse the circuit court's judgment only where it has abused its discretion.[2] *Id.* " '[A] trial court abuses its discretion if it fails to apply the proper criteria when it weighs the facts,' and a reviewing court 'must consider both the legal adequacy of [the] way the trial court reached its result as well as whether the result is within the bounds of reason.' " *Paul*, 223 Ill. 2d at 99 (quoting *People v. Ortega*, 209 Ill. 2d 354, 360 (2004)).

¶ 34    Here, the circuit court found that defendant had established due diligence, as defendant alleged that he first became aware of the lawsuit in October 2021 and filed his petition four months after the discovery. The court further found that while a four-month delay could demonstrate a lack of diligence in other cases, "the Court is inclined to be lenient given that many are still adjusting to the COVID-19 pandemic" and, accordingly, found the delay not to be unreasonable. We cannot find, however, that the record supports the circuit court's conclusion and therefore must find that its decision to grant defendant's petition constitutes an abuse of discretion.

¶ 35    There is no bright-line rule for determining whether a petitioner has acted diligently, as "due diligence is judged by the reasonableness of the petitioner's conduct under all of the

---

[2] Plaintiff contends that we should apply a *de novo* standard of review, as the circuit court did not conduct an evidentiary hearing. Plaintiff's citation to *Warren County* in support of this point is inapposite, however, as it was discussing legal-based challenges to a judgment, not the fact-based challenges as in the case at bar. See *Warren County*, 2015 IL 117783, ¶ 45 (discussing *Vincent*, which represented a legal challenge to a judgment).

circumstances." *Id.* at 99-100. However, due diligence requires the petitioner to have a reasonable excuse for failing to act, and "does not afford a litigant a remedy whereby he may be relieved of the consequences of his own mistake or negligence." *Airoom*, 114 Ill. 2d at 222. In this case, the circuit court relied on defendant's allegation that he first became aware of the lawsuit in October 2021 in finding that a four-month delay in filing the petition was not unreasonable. As explained above, however, defendant was served, albeit through substitute service, in January 2020. Thus, his delay was not four months but, instead, was two years after service, and over a year after the entry of the default judgment. Defendant provided no explanation for the delay between the date of the service and the date he allegedly first became aware of the lawsuit, and we cannot find that his bare allegation as to the date of his actual knowledge[3] constitutes sufficient evidence of his diligence in responding to the lawsuit. While we recognize that the circuit court may have been inclined to be lenient, especially given the circumstances present in the world in 2020 and 2021, defendant's failure to provide any evidence—or even any explanation, written or otherwise—to excuse his delay in the instant case means that he has no "reasonable excuse for failing to act" (*Airoom*, 114 Ill. 2d at 222), as required for relief under section 2-1401. We therefore must find that the circuit court abused its discretion in finding the due diligence requirement satisfied, and accordingly reverse its grant of defendant's section 2-1401 petition. See *Carson*, 2017 IL App (1st) 163386, ¶ 36 (finding abuse of discretion where defendant failed to establish due diligence).

---

[3] We note that attached to plaintiff's motion to dismiss was a certified mailing receipt which indicates that defendant signed for a document on September 13, 2021. While the receipt does not indicate which document was mailed, the record shows that plaintiff's attorney mailed a copy of an alias citation to discover assets to defendant via certified mail on September 7, 2021, and plaintiff's motion alleges that this is the document which defendant signed for on September 13, 2021. Our analysis remains the same, however, regardless of whether defendant purportedly became aware of the lawsuit in September 2021 or October 2021.

¶ 36                                          CONCLUSION

¶ 37      The circuit court's grant of defendant's section 2-1401 petition is reversed, as defendant was properly served by substitute service and failed to establish compliance with the requirements for relief under section 2-1401 as set forth by our supreme court in *Airoom*.

¶ 38      Reversed.